B1 (Official Form 1 (1/08)

| United States Bankruptcy Court<br>District of Delaware | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>REGENT COMMUNICATIONS, INC., a Delaware corporation | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>NOT APPLICABLE |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): **None** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all):  31-1492857 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete<br>EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>2000 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, Ohio<br>ZIP CODE 45202 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Hamilton County, Ohio | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above).<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which the<br>Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above<br>entities, check this box and state the type of<br>entity below.)<br><br>_____ | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☒ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for<br>Recognition of a Foreign<br>Main Proceeding<br>☐ Chapter 15 Petition for<br>Recognition of a Foreign<br>Nonmain Proceeding |

| | Tax-Exempt Entity<br>(Check box, if applicable)<br><br>☐ Debtor is a tax-exempt organization under<br>Title 26 of the United States Code (the<br>Internal Revenue Code) | Nature of Debts<br>(Check one box.)<br><br>☐ Debts are primarily    ☒ Debts are primarily<br>Debts, defined in 11     business debts.<br>U.S.C. § 101(8) as<br>"incurred by an<br>individual primarily<br>for a personal, family,<br>or household purpose." |
|---|---|---|

| Filing Fee (Check one box.) | Chapter 13 Debtors |
|---|---|
| ☒ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the debtor<br>is unable to pay fee except in installments. Rule 1006(b). See Official Form<br>3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D)<br><br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D)<br><br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts<br>owed to insiders or affiliates) are less than $2,190,000.<br>--------------------------------------------------------<br>**Check all applicable boxes**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more<br>classes of creditors, in accordance with 11 U.S.C. a small business<br>debtor as defined in 11 U.S.C. § 1126(b) |

| Statistical/Administrative Information | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds<br>available for distribution to unsecured creditors. | |

Estimated Number of Creditors on a Consolidated Basis

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☐<br>200-999 | ☐<br>1,000-<br>5,000 | ☐<br>5,001-<br>10,000 | ☒<br>10,001-<br>25,000 | ☐<br>25,001-<br>50,000 | ☐<br>50,001-<br>100,000 | ☐<br>Over<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets on a Consolidated Basis

| ☐<br>$0 to<br>$50,000 | ☐<br>$50,001 to<br>$100,000 | ☐<br>$100,001 to<br>$500,000 | ☐<br>$500,001<br>to $1 million | ☐<br>$1,000,001<br>to $10 million | ☐<br>$10,000,001<br>to $50 million | ☐<br>$50,000,001<br>to $100 million | ☒<br>$100,000,001<br>to $500 Million | ☐<br>$500,000,001<br>to $1 billion | ☐<br>More than<br>$1 Billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities on a Consolidated Basis

| ☐<br>$0 to<br>$50,000 | ☐<br>$50,001 to<br>$100,000 | ☐<br>$100,001 to<br>$500,000 | ☐<br>$500,001<br>to $1 million | ☐<br>$1,000,001<br>to $10 million | ☐<br>$10,000,001<br>to $50 million | ☐<br>$50,000,001<br>to $100 million | ☒<br>$100,000,001<br>to $500 Million | ☐<br>$500,000,001<br>to $1 billion | ☐<br>More than<br>$1 billion |
|---|---|---|---|---|---|---|---|---|---|

DB02:9314647.1

069016.1001

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | **Name of Debtor(s):** **REGENT COMMUNICATIONS, INC.,** a Delaware corporation | |
|---|---|---|
| **All Prior Bankruptcy Cases Filed Within Last 8 Years** If more than two, attach additional sheet. | | |
| Location Where Filed: | Case Number | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |
| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
| Name of Debtor: See Addendum Attached Hereto | Case Number: | Date Filed; |
| District: | Relationship: | Judge: |

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☒   Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petition that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).

X _____
    Signature of Attorney for Debtor(s)          (Date)

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☒   No.

**Exhibit D**

(To be completed by every individual debtor.  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

☒   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence.  (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

DB02:9314647.1                                                                 069016.1001

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s): **REGENT COMMUNICATIONS, INC.**, a Delaware corporation |
|---|---|

| **Signatures** | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

| | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. ☐  I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. ☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X _____ Signature of Debtor | X _____ (Signature of Representative) |
| X _____ Signature of Joint Debtor | X _____ (Printed Name of Foreign Representative) |
| _____ Telephone Number (if not represented by attorney) | |
| _____ Date | _____ Date |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____ Signature of Attorney for Debtor(s) Michael R. Nestor (No. 3526) YOUNG CONAWAY STARGATT & TAYLOR LLP 1100 West Street, 17th Floor Wilmington, Delaware 19801 Telephone: (302) 571-6600 Facsimile: (302) 571-1253 Email: mnestor@ycst.com     and Josef S. Athanas Caroline A. Reckler LATHAM & WATKINS LLP 233 S. Wacker Drive, Suite 5800 Chicago, IL 60606 Telephone: (312) 876-7700 Facsimile: (312) 993-9767 E-mail: caroline.reckler@lw.com Date 3-1-10 , 2010 \*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. _____ Printed Name and title, if any, of Bankruptcy Preparer _____ Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) _____ Address X _____ _____ Date |

| **Signature of Debtor (Corporation/Partnership)** | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. X _____ Signature of Authorized Individual Anthony A. Vasconcellos Executive Vice President, Chief Financial Officer Date: 3-1 , 2010 | Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## Addendum to the Voluntary Petition

Pending Bankruptcy Cases Filed By Any Spouse, Partner Or Affiliate Of This Debtor:

On the date hereof, each of the affiliated entities listed below (including the Debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

Regent Communications, Inc.

B & G Broadcasting, Inc.

Livingston County Broadcasters, Inc.

Regent Broadcasting, LLC

Regent Broadcasting Management, LLC

Regent Broadcasting Midwest, LLC

Regent Broadcasting of Albany, Inc.

Regent Broadcasting of Bloomington, Inc.

Regent Broadcasting of Buffalo, Inc.

Regent Broadcasting of Chico, Inc.

Regent Broadcasting of Duluth, Inc.

Regent Broadcasting of El Paso, Inc.

Regent Broadcasting of Erie, Inc.

Regent Broadcasting of Evansville/Owensboro, Inc.

Regent Broadcasting of Flagstaff, Inc.

Regent Broadcasting of Flint, Inc.

Regent Broadcasting of Ft. Collins, Inc.

Regent Broadcasting of Grand Rapids, Inc.

Regent Broadcasting of Kingman, Inc.

Regent Broadcasting of Lafayette, LLC

Regent Broadcasting of Lake Tahoe, Inc.

Regent Broadcasting of Lancaster, Inc.

Regent Broadcasting of Lexington, Inc.

Regent Broadcasting of Mansfield, Inc.

Regent Broadcasting of Palmdale, Inc.

Regent Broadcasting of Peoria, Inc.

Regent Broadcasting of Redding, Inc.

Regent Broadcasting of San Diego, Inc.

Regent Broadcasting of South Carolina, Inc.

Regent Broadcasting of St. Cloud, Inc.

Regent Broadcasting of St. Cloud II, Inc.

Regent Broadcasting of Utica/Rome, Inc.

Regent Broadcasting of Watertown, Inc.

Regent Broadcasting West Coast, LLC

Regent Licensee of Chico, Inc.

Regent Licensee of Erie, Inc.

Regent Licensee of Flagstaff, Inc.

Regent Licensee of Kingman, Inc.

Regent Licensee of Lake Tahoe, Inc.

Regent Licensee of Lexington, Inc.

Regent Licensee of Mansfield, Inc.

Regent Licensee of Palmdale, Inc.

Regent Licensee of Redding, Inc.

Regent Licensee of San Diego, Inc.

Regent Licensee of South Carolina, Inc.

Regent Licensee of St. Cloud, Inc.

Regent Licensee of Utica/Rome, Inc.

Regent Licensee of Watertown, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>REGENT COMMUNICATIONS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-_____ (____)<br><br>Joint Administration Pending |

## EXHIBIT "A" TO VOLUNTARY PETITION

1.    Debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934.  Its SEC File Number is  000-29079.

2.    The following financial data refers to the Debtors' condition on a consolidated basis as of January 31, 2010.

a.    Total assets                Approximately $166,506,000

b.    Total debts (including debts listed in 2.c., below)        Approximately $211,282,000

c.    Debt securities held by more than 500 holders:        None.

| | | | | | | Approximate number of institutional investor holders |
|---|---|---|---|---|---|---|
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | | $    N/A | | N/A |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | | $    N/A | | N/A |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | | $    N/A | | N/A |
| d.  Number of shares of Series J Preferred Stock | | | | 0 | x | 0 |
| e.  Number of shares of Common Stock | | | | 43,005,020* | x | 46** |

* as of February 20, 2010.

** as of December 24, 2009.

3.    Brief description of debtors' business:

Regent Communications, Inc. is a radio broadcasting company that acquires, develops, and operates radio stations.  There are 47 subsidiary entities with 62 radio stations in markets in Colorado, Illinois, Indiana, Kentucky, Louisiana, Michigan, Minnesota, New York, and Texas.  Regent Communications, Inc. focuses on radio stations in mid-sized market that are diversified in terms of geographic location, target demographics and format in order to minimize the effects of downturns in specific markets and changes in format preferences.

4.    List the names of any persons who directly or indirectly owns, controls or holds, with power to vote, 5% or more of the voting securities of debtors:

| Holder | Class of Shares | Number of Shares of Common Stock Owned | Percent of Common Stock Owned |
|---|---|---|---|
| Entities affiliated with John J. Ahn c/o Bryant Riley 11100 Santa Monica Blvd., Suite 800 Los Angeles, California 90025 | Common | 4,155,129 | 9.66 |
| Entities affiliated with Bryant Riley 11100 Santa Monica Blvd., Suite 800 Los Angeles, California 90025 | Common | 4,119,629 | 9.58 |
| Entities affiliated with Lloyd I. Miller, III 4550 Gordon Drive Naples, Florida 34102 | Common | 2,986,929 | 6.95 |
| Entities affiliated with John H. Wyant 1100 Chiquita Center 250 East Fifth Street Cincinnati, Ohio 45202 | Common | 2,975,877 | 6.92 |
| Entities affiliated with Blue Chip Venture Company, Ltd. 1100 Chiquita Center 250 East Fifth Street Cincinnati, Ohio 45202 | Common | 2,945,877 | 6.85 |
| HJH Partners, LLC 8 Sound Shore Drive, Suite 265 Greenwich, CT  06830 | Common | 2,845,452 | 6.62 |
| Entities affiliated with Don A. Sanders 600 Travis, Suite 3100 Houston, Texas 77002 | Common | 2,671,479 | 6.21 |
| Entities affiliated with Dimensional Fund Advisors LP Palisades West, Building One 6300 Bee Cave Road Austen, Texas 78746 | Common | 2,213,848 | 5.15 |

## REGENT COMMUNICATIONS, INC

## SECRETARY'S CERTIFICATE

I, Ginger A. Scherbarth, do hereby certify that I am duly elected, qualified and acting Director, Human Resources and Corporate Secretary of Regent Communications, Inc., a Delaware corporate (the "Company"), authorized to execute this certificate on behalf of the Board of Directors of the Company at a meeting held on February 28, 2010. Such resolutions have been entered into the corporate records of the Company and have not been amended or revoked and are in full force and effect on the date hereof.

IN WITNESS WHEREOF, I have hereunto signed my name this 28th day of February , 2010.

REGENT COMMUNICATIONS, INC.

By: _____

Name:  Ginger A. Scherbarth
Title:  Director, Human Resources and Corporate Secretary

SECRETARY'S CERTFICATE OF REGENT COMMUNICATIONS, INC

# RESOLUTIONS ADOPTED BY
# THE BOARD OF DIRECTORS OF
# REGENT COMMUNICATIONS, INC.

February 28, 2010

## Restructuring Transactions Generally

**WHEREAS**, due to uncertain business, economic and financial conditions generally, and the radio broadcasting industry more particularly, and the impact of such conditions on the business and financial conditions of Regent Communications, Inc., a Delaware corporation (the "Corporation"), in December of 2009, the Board of Directors of the Corporation (the "Board") determined to review a possible restructuring or other strategic alternative involving the Corporation (the "Possible Restructuring Alternatives");

**WHEREAS**, the Corporation is party to that certain Credit Agreement, dated as of November 21, 2006 (as amended, modified, supplemented, or waived from time to time, the "Prepetition Credit Agreement"), by and among Regent Broadcasting, LLC, a wholly-owed subsidiary of the Corporation, as borrower, the guarantors party thereto (including, the Corporation), Bank of America, N.A., as administrative agent and issuing lender ("BofA"), and the banks and other financial institutions from time to time party thereto, as lenders (the "Prepetition Credit Facility Lenders"), providing for a maximum revolving credit facility, an initial senior secured Term B Loan, and a senior secured delayed draw term loan facility;

**WHEREAS**, the Corporation, together with its subsidiaries, is party to certain Specified Swap Agreements (collectively, the "Specified Swap Agreements"), including: (i) those certain Confirmations dated December 4, 2006 and December 16, 2006, between BofA and the Corporation, as amended, (ii) those certain Confirmations of Swap Transactions, dated December 4, 2006 and December 15, 2006, between Suntrust ("Suntrust") and the Corporation, as amended, and (iii) that certain Confirmation dated December 5, 2006, and that certain ISDA Master Agreement dated as of January 12, 2007, in each case between Bank of Montreal ("Bank of Montreal" and, together with BofA and Suntrust, the "Swap Counterparties", and together with the Prepetition Credit Facility Lenders, the "Prepetition Lenders"), Regent Broadcasting, LLC, as amended;

**WHEREAS**, the Board has reviewed the materials presented by management and the outside financial and legal advisors of the Corporation regarding the Corporation's financial condition, capital structure, liquidity position, business model and projections, short term and long term prospects, the possible restructuring alternatives available to it, and the impact of the foregoing on its businesses;

**WHEREAS**, the Board has determined that it is advisable and in the best interests of the Corporation, its creditors, stockholders and other interested parties, that it authorize and approve a restructuring transaction involving the Corporation and its subsidiaries (the "Restructuring Transaction") that provides for, among other things:

- a reorganization of the Corporation and its subsidiaries through the filing of voluntary petitions for relief under the provisions of Title 11 of the United States Code, Sections 101 *et seq.* (the "Bankruptcy Code") on the terms and conditions set forth in the Restructuring Term Sheet attached hereto as Exhibit A (the "Restructuring Term Sheet");

- a restructuring of the Prepetition Credit Agreement and Specified Swap Agreements on the terms and conditions set forth in the Terms of Senior Secured Term Loans attached hereto as Exhibit B, and Terms of PIK Loans attached hereto as Exhibit C;

- the execution of the Restructuring Support Agreement, in substantially the form attached hereto as Exhibit D (the "Support Agreement"), proposed to be entered into by the Corporation, its subsidiaries and certain of the Prepetition Lenders pursuant to which such Prepetition Lenders would agree, among other things, to vote in favor of the Restructuring Transaction in the Chapter 11 Case (as defined below); and

- the solicitation of votes for, and consummation of, a pre-negotiated Chapter 11 plan of reorganization of the Corporation and its subsidiaries pursuant to Chapter 11 of the Bankruptcy Code, in substantially the form attached hereto as Exhibit E (the "Plan", and together with Exhibits A-D, the "Restructuring Transaction Documents").

**WHEREAS**, the Board has determined that it is advisable and in the best interests of the Corporation, its creditors, stockholders and other interested parties, that to date the Restructuring Transaction is the best of the Possible Restructuring Alternatives in that it maximizes the value of the Corporation for all stakeholders generally and that the Corporation enter into the Restructuring Transaction, on the terms and conditions set forth in the Restructuring Transaction Documents.

**NOW THEREFORE BE IT RESOLVED**, that the Restructuring Transaction, on the terms and conditions set froth in the Restructuring Transaction Documents be, and hereby, is authorized and approved;

**FURTHER RESOLVED**, that each "proper officer" (as defined below) of the Corporation be, and each of them hereby is, authorized and directed, with full power of delegation, on behalf of and in the name of the Corporation, to document, execute, deliver and otherwise enter into the Restructuring Transaction Documents, as the same may be amended, supplemented or modified as such proper officers may consider necessary, proper or desirable, and/or on such other terms and conditions as such proper officers may consider necessary, proper or desirable, the execution thereof by such proper officers to be conclusive evidence of such determination, and to negotiate, document, execute and deliver such other documents and to take all other actions, in each case, as they or any of them shall deem necessary, proper or desirable to effect the Restructuring Transaction; provided, that the proper officers shall not approve any material amendments, supplements or modifications to, or other amendments, supplements or

modifications that are materially inconsistent with, the Restructuring Transaction or the Restructuring Transaction Documents without the prior approval of the Board of Directors;

## Commencement of Bankruptcy Case

**FURTHER RESOLVED**, that the Corporation and each of its subsidiaries are hereby authorized and directed to file or cause to be filed voluntary petitions for relief under the provisions of Chapter 11 of the Bankruptcy Code (the case commenced thereby, the "Chapter 11 Case");

**FURTHER RESOLVED**, that each proper officer shall be, and each of them hereby is, authorized and directed on behalf of the Corporation to execute and verify said petition on behalf of and in the name of the Corporation under Chapter 11 of the Bankruptcy Code and to cause the same to be filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in such form and at such time as the proper officer executing said petition shall determine;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation to execute and verify the necessary documents in connection with the commencement of the Chapter 11 Case in the name of the Corporation in such form and at such time as the proper officer executing said petition shall determine, and to take any necessary steps to coordinate each Chapter 11 case contemplated by the Corporation and its subsidiaries under the Bankruptcy Code;

## Post-Petition Use of Cash Collateral

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to negotiate and take all actions necessary or appropriate for the Corporation to enter into one or more cash collateral agreements (collectively, the "Cash Collateral Documents") and, if appropriate, such loan agreements, documents, notes, guaranties, security agreements, pledge agreements and all other documents, agreements or instruments (collectively, the "Credit Documents"), in each case, as may be deemed necessary or appropriate by a proper officer;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed, with full power of delegation, on behalf of and in the name of the Corporation, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein) all necessary documents, including, without limitation, all Cash Collateral Documents, Credit Documents, petitions, affidavits, schedules, motions, lists, applications, pleadings and other papers, and in connection therewith to employ and retain all assistance by legal counsel, accountants or other professionals and to take any and all actions which the proper officer deems necessary and proper in connection with the Chapter 11 Case or with any cash collateral agreements contemplated hereby;

## Post-Petition Credit Facilities

**FURTHER RESOLVED**, each proper officer be, and each of them hereby is, authorized, empowered and directed, in the name and on behalf of the Corporation, to negotiate,

document, execute, deliver and otherwise enter into a restructuring of the Prepetition Credit Agreement and Specified Swap Agreements pursuant to a new first priority, senior secured term loan, (the "New Term Loan") and a new unsecured paid-in-kind loan (the "New PIK Loan"), and such related documents, guaranties, security agreements, pledge agreements, certificates, notes or instruments as such officers consider appropriate, on terms and conditions set forth in the term sheets attached hereto as <u>Exhibits B</u> and <u>C</u>, respectively, as otherwise amended, supplemented or modified as such proper officer may consider necessary, proper or desirable, and/or on such other terms and conditions as such proper officer may consider necessary, proper or desirable, the execution thereof by such proper officer to be conclusive evidence of such determination; provided, that the proper officer shall not approve any material amendments, supplements or modifications to, or other amendments, supplements or modifications to the New Term Loan or New PIK Loan that are generally inconsistent with, the Restructuring Transaction or the Restructuring Transaction Documents without the prior approval of the Board of Directors;

## Retention of Professionals

      **FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the law firms of Latham & Watkins LLP, 233 S. Wacker Drive, Chicago, IL 60606 and Young Conaway Stargatt & Taylor LLP ("Young Conaway"), 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 as attorneys for the Corporation in connection with the Chapter 11 Case and the negotiation of any Cash Collateral Documents and/or Credit Documents, as the case may be, and to take any and all actions to advance the Corporation's rights and obligations, including filing any pleadings, in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Latham & Watkins LLP and Young Conaway;

      **FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the financial services firm of Oppenheimer & Co. Inc. ("Oppenheimer"), as financial advisors for the Corporation in connection with the Chapter 11 Case and the negotiation of any Cash Collateral Documents and/or Credit Documents, as the case may be, and to take any and all actions to advance the Corporation's rights and obligations in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Oppenheimer;

      **FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the financial services firm of Financial Resource Associates, Inc. ("FRA"), as financial advisors for the Corporation in connection with the Chapter 11 Case and the negotiation of any Cash Collateral Documents and/or Credit Documents, as the case may be, and to take any and all

actions to advance the Corporation's rights and obligations in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of FRA;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the claims and noticing firm of Kurtzman Carson Consultants LLC ("KCC"), as claims agent for the Corporation in connection with the Chapter 11 Case and the negotiation of any Cash Collateral Documents and/or Credit Documents, as the case may be, and to take any and all actions to advance the Corporation's rights and obligations in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of KCC;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the firm of Ernst & Young LLP ("E&Y"), as tax advisors for the Corporation in connection with the Chapter 11 Case and the negotiation of any Cash Collateral Documents and/or Credit Documents, as the case may be, and to take any and all actions to advance the Corporation's rights and obligations in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of E&Y;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain the firm of Brainerd Communications, Inc. ("Brainerd"), as corporate communications consultants to represent and assist the Corporation in connection with the Chapter 11 Case, and to take any and all actions to advance the Corporation's rights and obligations in connection with the Chapter 11 Case and with any post-petition financing; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 Case, and cause to be filed an appropriate application with the Bankruptcy Court for authority to retain the services of Brainerd;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed, on behalf of and in the name of the Corporation, to employ any other professionals necessary to assist the Corporation in carrying out its duties under the Bankruptcy Code; and in connection therewith, the proper officers are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to or immediately upon the filing of the Chapter 11 Case and cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of any other professionals, as necessary;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed on behalf of and in the name of the Corporation, to employ and retain such further legal, financial, accounting and bankruptcy services firms (together with Latham & Watkins LLP and its affiliates, Young Conaway, Oppenheimer, FRA, KCC, E&Y and Brainerd, the "<u>Professionals</u>") as may be deemed necessary or appropriate by the proper officer;

## General

**FURTHER RESOLVED**, that all acts lawfully done or actions lawfully taken by any officer of the Corporation or any of the Professionals to seek relief on behalf of the Corporation under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case in connection with such proceedings, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of the Corporation;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed, with full power of delegation, on behalf of and in the name of the Corporation, to take or cause to be taken any and all such further action and to execute and deliver or cause to be executed or delivered all such further agreements, documents, certificates, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, undertakings or other documents, and to incur all such fees and expenses, as in their judgment shall be necessary, appropriate or advisable to effectuate the purpose and intent of any and all of the foregoing resolutions;

**FURTHER RESOLVED**, that each proper officer be, and each of them hereby is, authorized and directed, with full power of delegation, on behalf of and in the name of the Corporation to amend, supplement or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements or other writings referred to in the foregoing resolutions; and

**FURTHER RESOLVED**, that for the purposes of these resolutions, the "proper officers" of the Corporation shall be the Chief Executive Officer, President, Chief Financial Officer, Vice President (regardless of designation), Secretary, Treasurer, and any other designated officer of the Corporation.

069016.1001

<u>Exhibit A</u>

Restructuring Term Sheet

**RESTRUCTURING TERM SHEET**
**FEBRUARY 28, 2010**

THIS TERM SHEET (THE "TERM SHEET") DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN OF REORGANIZATION, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY AND/OR OTHER APPLICABLE LAWS. THIS TERM SHEET DOES NOT ADDRESS ALL MATERIAL TERMS AND CONDITIONS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL FINANCIAL RESTRUCTURING AND IS SUBJECT TO THE EXECUTION OF DEFINITIVE DOCUMENTATION IN FORM AND SUBSTANCE CONSISTENT WITH THIS TERM SHEET AND OTHERWISE ACCEPTABLE IN ALL RESPECTS TO THE REQUISITE CONSENTING LENDERS (AS DEFINED IN THE RESTRUCTURING SUPPORT AGREEMENT TO WHICH THIS TERM SHEET IS ATTACHED) AND THE DEBTORS (AS DEFINED IN THE RESTRUCTURING SUPPORT AGREEMENT TO WHICH THIS TERM SHEET IS ATTACHED).

This Term Sheet sets forth the principal terms of a proposed financial restructuring (the "Restructuring") for the existing debt and other obligations of the Companies through a prearranged plan of reorganization of the Companies (a "Plan") containing the terms and conditions described herein and other standard and customary provisions, including without limitation provisions concerning "pass-through" treatment for administrative and priority claims, trade payables and leases.

All capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement.

## GENERAL RESTRUCTURING TERMS

| | |
|---|---|
| **CREDIT AGREEMENT:** | The Credit Agreement dated November 21, 2006, among Parent, Borrower, Bank of America, N.A. ("BofA") as administrative agent ("Administrative Agent"), BofA as issuing lender ("Issuing Lender") and the other entities party thereto as lenders ("Lenders"), as heretofore amended. |
| **SPECIFIED SWAP AGREEMENTS:** | The swap agreements currently outstanding with Lender Counterparties representing approximately $12.1 million of liabilities owed by Borrower. All obligations under the Specified Swap Agreements are referred to herein as the "Specified Swap Obligations". |
| **LENDER COUNTERPARTIES:** | BofA, Suntrust, Bank of Montreal and their respective successors and permitted assigns. |
| **PARENT:** | Regent Communications, Inc. |
| **BORROWER:** | Regent Broadcasting, LLC |
| **COMPANIES:** | Parent, Borrower and all subsidiaries of Borrower. |
| **REORGANIZED PARENT:** | Parent as reorganized in connection with the Restructuring, a successor thereto or a newly formed company to be formed for the purpose of owning the Companies. |
| **REORGANIZED BORROWER:** | Borrower as reorganized in connection with the Restructuring or a successor thereto. |
| **NEW EQUITY:** | 100% of all equity of Reorganized Parent as of the effective date of the Plan (the "Effective Date"). The New Equity will be structured in a manner reasonably acceptable to the Requisite Consenting Lenders (as defined in the Restructuring Support Agreement), including (without limitation) limitations on certain fundamental actions, and so as to ensure, by way of limited voting rights, that the holders thereof (other than Oaktree Capital Management, L.P. and its controlled affiliates (collectively, "Oaktree")) will hold a "nonattributable" interest in the Companies under applicable FCC rules and policies. In addition, to the extent any Consenting Lender's direct or indirect owners include entities or persons which would be included in the calculation of foreign ownership for purposes of Section 310(b) of the Communications Act of 1934, as amended, and the FCC's rules and policies promulgated thereunder, such Consenting Lender may, if requested by Oaktree, be required to receive a warrant for New Equity in lieu of New Equity in order to satisfy FCC foreign ownership limitations. Finally, the Reorganized Parent and the holders of the New Equity will be required to enter into definitive investment agreements providing for, subject to customary exceptions, tag-along rights on transfers by Oaktree, preemptive rights on equity issuances (subject to certain exceptions reasonably acceptable to the Requisite Consenting Lenders), demand and piggyback registration rights and transfer restrictions, as well as drag-along provisions in favor of Oaktree, in each case in form and substance reasonably acceptable to the Requisite Consenting Lenders. |

**RESTRUCTURING:**      The Commitments under the Credit Agreement will be terminated. All Obligations (as defined in the Credit Agreement), including all Loans under the Credit Agreement and the Specified Swap Obligations, will be exchanged for the following, allocated among the applicable Secured Parties on a pro rata basis:

- $95 million of Senior Secured Term Loans incurred by Reorganized Borrower on substantially the terms set forth below,

- $25 million of PIK Loans incurred by Reorganized Borrower on substantially the terms set forth below, and

- 100% of the New Equity issued by Reorganized Parent, which will be subject to dilution by the Management Equity Incentive Program described below and future post-Restructuring issuances.

**UNSECURED CLAIMS:**      The Lenders shall waive their deficiency claims against the Debtors. All other unsecured claims shall be paid in full in cash on or prior to the Effective Date.

**EXISTING EQUITY:**      The Plan shall provide that the Secured Parties will make a gift of, or allow the Companies to distribute from the Secured Parties' collateral, $5.5 million to the current shareholders of Parent on a pro rata basis. Upon distribution of such amount, the outstanding shares of Parent will be cancelled.

**COMPENSATION PLANS:**      The Plan shall provide that the Companies assume the (i) existing employment agreements of Anthony A. Vasconcellos and William L. Stakelin, as amended on February 28, 2010 (the "Employment Agreements"), (ii) 2004 Corporate Employee Retention and Severance Plan, (iii) 2010 Special Bonus Plan with bankruptcy incentives as adopted by the board in December 2009, and (iv) Regent Communications, Inc. Deferred Compensation Plan.

**MANAGEMENT EQUITY INCENTIVE PROGRAM:**      Options, equity or other equity-based grants equal to 8% of the total New Equity on a fully diluted basis will be reserved for a management equity incentive plan, the specific terms of which will be determined by the board of Reorganized Parent.

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**      Executory contracts and unexpired leases shall be assumed or rejected pursuant to a schedule to be attached to the Plan Supplement, which shall be acceptable in all respects to the Requisite Consenting Lenders in their sole discretion, including any amendments prior to the Effective Date.

**PRIVATE COMPANY:**      The Reorganized Parent would not be listed on a national securities exchange or be an SEC-reporting company.

**RELEASES:**      To the extent allowable by law, the Plan will contain customary releases and other exculpatory provisions in favor of (i) the Company, its present directors, officers and professional advisors and (ii) the Consenting

Lenders, their respective directors, officers, partners, members, representatives, employees, professional advisors and other parties to be agreed upon by the Borrower and the Requisite Consenting Lenders.

**EXPENSE REIMBURSEMENT:** All reasonable and documented out-of-pocket expenses of the Requisite Consenting Lenders, their counsel (including but not limited to, Kirkland & Ellis LLP, Drinker Biddle & Reath LLP and Finn Dixon & Herling LLP) and their financial advisor shall be paid in full in cash.

## Exhibit B

Terms of Senior Secured Term Loans

DB02:9314954.1

069016.1001

## TERMS OF SENIOR SECURED TERM LOANS

| | |
|---|---|
| **PRINCIPAL AMOUNT:** | $95 million |
| **AGENT:** | To be determined. |
| **MATURITY DATE:** | 4 years from the Effective Date. |
| **RATE:** | One-month LIBOR plus 4.0% and, upon an event of default, increased to one-month LIBOR plus 6.0%; _provided_ that, in each case, there shall be a LIBOR floor of 1.25%. |
| **GUARANTORS:** | A newly formed holding company of Reorganized Borrower which is 100% owned by Reorganized Parent and all subsidiaries of Reorganized Borrower. |
| **COLLATERAL:** | Subject to the New Revolving Loans (as defined below), first priority perfected security interest on all personal and real property of Reorganized Borrower and Guarantors, subject to exceptions to be agreed and limitations and qualifications relating to FCC licenses to be agreed, in each case by the Reorganized Borrower and the Requisite Consenting Lenders. |
| **VOLUNTARY PREPAYMENTS:** | Voluntary prepayments shall be permitted without premium or penalty subject to customary thresholds and notice requirements. |
| **MANDATORY REPAYMENTS:** | • 1% amortization per annum of the Principal Amount with remainder payable in full on the Maturity Date <br><br> • Semi-Annual payment of 50% of excess cash flow, with definition to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders <br><br> • Mandatory repayment from asset sale proceeds subject to exceptions and permitted reinvestment to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders |
| **FINANCIAL COVENANTS:** | Beginning on December 31, 2010 (for the immediately preceding quarter), quarterly financial covenants to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders. |
| **REPRESENTATIONS & WARRANTIES, COVENANTS & EVENTS OF DEFAULT:** | Representations and warranties, affirmative and negative covenants, and events of default to be customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |
| **EXPENSE REIMBURSEMENT & INDEMNIFICATION:** | Expense reimbursement and indemnification in favor of Agent, lenders and their related parties on terms customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |

5

CH\1150069.9

Exhibit C

Terms of PIK Loans

### TERMS OF PIK LOANS

| | |
|---|---|
| **PRINCIPAL AMOUNT:** | $25 million |
| **NOTES AGENT:** | To be determined by the Requisite Consenting Lenders. |
| **MATURITY DATE:** | 4 years and 6 months from the Effective Date. |
| **RATE:** | 12% payable in kind on a quarterly basis. |
| **RANKING:** | Unsecured debt, subordinated to the Senior Secured Term Loans. |
| **REPRESENTATIONS & WARRANTIES, COVENANTS, EVENTS OF DEFAULT AND OTHER PROVISIONS:** | Representations and warranties, affirmative and negative covenants, events of default and other terms to be customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |

CH\1150069.9

Exhibit D

Restructuring Support Agreement

DB02:9314954.1

069016.1001

EXECUTION COPY

RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (together with the Term Sheet, as defined below, this "Agreement") is made and entered into as of February 28, 2010, by and among (i) Regent Communications, Inc., a Delaware corporation ("Parent"), Regent Broadcasting, LLC, a Delaware limited liability company ("Regent"), and all of their undersigned subsidiaries and affiliates that may or will be one of the debtors in Regent's voluntary reorganization cases (collectively, the "Company" or the "Debtors," as appropriate) and (ii) the Lenders (defined below) that are signatories hereto (the "Consenting Lenders" and, together with the Company, the "Parties").

Capitalized terms used herein and not otherwise defined have the meanings assigned thereto in the Term Sheet (both as defined herein), as applicable.

W I T N E S S E T H:

WHEREAS, the Company is party to that certain Credit Agreement, dated as of November 21, 2006 (as amended, modified, supplemented, or waived from time to time, the "Credit Agreement"), by and among Regent, as borrower, the guarantors party thereto, Bank of America, N.A. ("BofA"), as administrative agent (in such capacity, the "Administrative Agent"), BofA, as issuing lender (in such capacity, the "Issuing Lender"), and the banks and other financial institutions from time to time party thereto, as lenders (the "Lenders"), providing for a maximum revolving credit facility of $75,000,000 (the "Revolving Credit Facility"), a $115,000,000 initial senior secured Term B Loan (the "Term Facility"), and a senior secured delayed draw term loan facility in the aggregate principal amount of $50,000,000 (the "Delayed Draw Facility", together with the Revolving Facility, the Delayed Draw Facility and the Term Facility, the "Credit Facility"). As of February 28, 2010, the Company is obligated for an aggregate principal amount of $41,633,504 outstanding under the Revolving Credit Facility, $108,504,343 under the Term Facility, and $42,469,828 under the Delayed Draw Facility (such obligations together with the other "Obligations" (as defined in the Credit Facility), collectively, the "Credit Facility Obligations");

WHEREAS, the Company is party to certain Specified Swap Agreements (collectively, the "Specified Swap Agreements"), including: (i) those certain Confirmations dated December 4, 2006 and December 16, 2006, between BofA and Regent Broadcasting, Inc., as amended, (ii) those certain Confirmations of Swap Transactions, dated December 4, 2006 and December 15, 2006, between Suntrust ("Suntrust") and Regent Broadcasting, Inc., as amended, and (iii) that certain Confirmation dated December 5, 2006, and that certain ISDA Master Agreement dated as of January 12, 2007, in each case between Bank of Montreal ("Bank of Montreal" and, together with BofA and Suntrust, the "Swap Counterparties"), and Regent Broadcasting, LLC, as amended. As of February 28, 2010, the Company is obligated for an aggregate principal amount of $12,102,361 under the Specified Swap Agreements (such obligations, collectively, the "Specified Swap Obligations" and, together with the Credit Facility Obligations but without duplication, the "Obligations");

WHEREAS, the Company's boards of directors have determined that a financial restructuring is advisable and in the best interests of their stockholders and creditors;

WHEREAS, the Parties, with the assistance of their legal and financial advisors, have engaged in good faith negotiations with the objective of reaching an agreement with regard to a restructuring of the outstanding indebtedness and liabilities of the Company, in accordance with the terms set forth in this Agreement;

WHEREAS, Exhibit A hereto is a term sheet (as may be amended, supplemented or otherwise modified only with the consent of Consenting Lenders who together hold at least 66 2/3% of the aggregate principal amount of the outstanding Obligations (such Consenting Lenders, the "Requisite Consenting Lenders") in their sole discretion, the "Term Sheet") setting forth the principal terms of a restructuring (the "Restructuring") of all the outstanding indebtedness under the Credit Agreement and the Specified Swap Agreements;

WHEREAS, the Term Sheet is expressly incorporated by reference herein and made a part hereof;

WHEREAS, the Company intends to: (a) to commence voluntary reorganization cases (each a "Chapter 11 Case," and collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to effect the Restructuring through a prenegotiated chapter 11 plan of reorganization, which such plan, including any amendment or modification thereto, shall be in form and substance acceptable to the Requisite Consenting Lenders and the Company and consistent in all respects with this Agreement (the "Prearranged Plan"); and (b) consistent with the terms of this Agreement, file and use reasonable efforts to obtain approval and confirmation, as applicable, of the Prearranged Plan and the accompanying disclosure statement, which such disclosure statement, including any amendment or modification thereto, shall be in form and substance acceptable to the Requisite Consenting Lenders and the Company and consistent in all respects with this Agreement (the "Disclosure Statement");

WHEREAS, each Consenting Lender is the holder of a claim, within the meaning of Section 101(5) of the United States Bankruptcy Code, arising out of or related to the Credit Facility and/or the Specified Swap Agreements, as applicable (each, a "First Lien Debt Claim");

WHEREAS, each Company and each Consenting Lender has reviewed, or has had the opportunity to review, this Agreement with the assistance of their respective legal and financial advisors of their own choosing;

WHEREAS, each Company and each Consenting Lender desires to consent to and support the Restructuring and, if applicable, vote to accept the Prearranged Plan and not otherwise act inconsistent with or impede the support of the Prearranged Plan that implements the terms of the Restructuring; and

WHEREAS, subject to execution of definitive documentation and appropriate approvals by the Bankruptcy Court of the Disclosure Statement and the Prearranged Plan, this Agreement sets forth the terms and conditions of the Parties' respective obligations hereunder.

2

CH\1150070.13

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto hereby agree as follows:

Section 1.    Term Sheet. The Term Sheet is incorporated by reference herein and is made part of this Agreement as if fully set forth herein. The general terms and conditions of the Restructuring are set forth in the Term Sheet; provided, however, that the Term Sheet is supplemented by the terms and conditions of this Restructuring Support Agreement. In the event of any inconsistencies between the terms of this Restructuring Support Agreement and the Term Sheet, the Term Sheet shall govern.

Section 2.    Support for the Prearranged Plan.

(a)    Each Debtor agrees to use its commercially reasonable efforts to: (i) support, complete and do all things necessary and appropriate to implement, and to otherwise take all appropriate action in furtherance of, the transactions embodied in this Agreement, including, without limitation, (A) commencing the Chapter 11 Cases on or before March 1, 2010 (the date of commencement of the Chapter 11 Cases is hereinafter referred to as the "Petition Date"), (B) filing the Prearranged Plan, Disclosure Statement and a motion seeking approval of procedures governing the solicitation of the Prearranged Plan (the "Solicitation Procedures Motion") with the Bankruptcy Court on the Petition Date; (C) obtaining an order of the Bankruptcy Court approving the Solicitation Procedures Motion and Disclosure Statement within thirty-three (33) calendar days of the Petition Date, (D) obtaining a Confirmation Order (defined below) within forty (40) calendar days of the Petition Date, (E) causing the effective date of the Prearranged Plan (the "Effective Date") to occur on or prior to the later of (x) fifteen (15) calendar days after the entry of the Confirmation Order and (y) three (3) business days after the date the Necessary Approval[1] from the Federal Communications Commission (the "FCC") is obtained, and (F) obtaining an order from the Bankruptcy Court approving the use of cash collateral and grant of adequate protection to the Lenders, each as described more fully in Section 7 hereof; (ii) obtain the Necessary Approval as soon as practicable after the Petition Date but in any event on or prior to July 23, 2010; and (iii) take all steps necessary and appropriate to obtain any and all required regulatory and/or third-party approvals for the Restructurings, including, without limitation, (A) filing the short-form FCC approval applications seeking a pro forma involuntary assignment of the Company's broadcasting and other FCC-issued licenses (the "FCC Licenses") to the Debtors ("Short-Form FCC Applications") within three (3) business days

---

[1]    For purposes hereof, "Necessary Approval" shall mean the earliest receipt of (a) FCC approval of transfer of control of the FCC Licenses to the holders of New Equity (as defined in the Term Sheet) issued pursuant to the Prearranged Plan (the "Transfer of Control"), (b) FCC approval of pro forma assignment or transfer of control of the FCC Licenses to a trust managed by Jay Meyers (or such other independent trustee acceptable to the Required Lenders (as defined in the Credit Agreement)) (the "Independent Trustee," and such trust, the "Independent Trust") pursuant to a trust agreement acceptable to the Requisite Consenting Lenders (the "Independent Trust Agreement") for the benefit of Reorganized Borrower (or its designee(s)), or (c) FCC approval of pro forma assignment or transfer of control of the FCC Licenses to a trust managed by a board comprised of four (4) members of the current board of directors of Parent and three (3) additional individuals, all seven (7) of which shall be selected by the Required Lenders (as defined in the Credit Agreement) (the "Traditional Trustee," and such trust, the "Traditional Trust") pursuant to a trust agreement acceptable to the Requisite Consenting Lenders (the "Traditional Trust Agreement") for the benefit of Reorganized Borrower (or its designee(s)).

3

of the Petition Date, (B) filing the long-form FCC approval applications seeking FCC consent to the Transfer of Control to the holders of new equity issued pursuant to the Prearranged Plan ("Long-Form FCC Applications") no later than three (3) business days after receipt of approval from the FCC of the Short-Form FCC Applications (or, if later, two (2) business days after the date on which the Requisite Consenting Lenders are prepared to file the Long-Form FCC Applications), (C) filing a motion (the "Independent Trust Motion") with the Bankruptcy Court seeking an order approving the Independent Trust and the Independent Trust Agreement, which order shall be acceptable to the Requisite Consenting Lenders in their sole discretion (the "Independent Trust Order"), within five (5) business days after the Petition Date, (D) filing the short-form FCC approval applications seeking an assignment to the Independent Trust of the FCC Licenses and any related assets designated by the Requisite Consenting Lenders (collectively, the "Independent Trust FCC Application") within three (3) business days after the later of (x) receipt of approval from the FCC of the Short-Form FCC Applications and (y) the date on which the Bankruptcy Court enters the Independent Trust Order, (E) filing the short-form FCC approval applications seeking an assignment to the Traditional Trust of the FCC Licenses and any related assets designated by the Requisite Consenting Lenders (collectively, the "Traditional Trust FCC Application") on the date which is the later of (x) three (3) business days after the entry of the Confirmation Order (as defined in Section 5(a)(5) below) and (y) the thirtieth (30th) calendar day following the filing of the Independent Trust FCC Application, or, if earlier requested by the Requisite Consenting Lenders, within three (3) business days after such request, (F) if requested by the Requisite Consenting Lenders, filing a motion (the "Traditional Trust Motion") with the Bankruptcy Court seeking an order approving the Traditional Trust and the Traditional Trust Agreement, which order shall be acceptable to the Requisite Consenting Lenders (the "Traditional Trust Order"), within five (5) business days after such request, and (G) using commercially reasonable efforts to otherwise support the Short-Form FCC Applications, the Long-Form FCC Applications, the Independent Trust Application, the Independent Trust Motion, the Traditional Trust Motion (if any) and the Traditional Trust FCC Application (if any).

(b)     Subject to the terms and conditions of this Agreement and in accordance with the terms hereof, each Debtor agrees to not object, commence any proceeding or otherwise oppose or alter any of the terms of the Prearranged Plan or any other document filed in connection with the confirmation of the Prearranged Plan (each such document, the terms of which shall be reasonably acceptable in all respects to the Requisite Consenting Lenders and the Debtors, a "Reorganization Document") and agrees to not take any action which is inconsistent with, or that would delay approval or confirmation of, the Prearranged Plan, the Disclosure Statement or any of the Reorganization Documents, or that could reasonably be expected to prevent, delay or impede the Restructuring pursuant to the Prearranged Plan or any Reorganization Document.

(c)     Subject to the terms and conditions of this Agreement and in accordance with the terms hereof, from the date hereof through the Effective Date, each Debtor agrees that it will operate in the ordinary course of business consistent with past practice and use its commercially reasonable efforts to keep intact the assets, operations and relationships of its business. Each Debtor shall inform the Requisite Consenting Lenders immediately about all occurrences which may have a material adverse effect on the assets, operations or relationships of the Debtors' businesses. In addition to, and not in limitation of, the foregoing, each Debtor hereby covenants and agrees that it shall not, without the consent of the Requisite Consenting

4

Lenders, extend, amend or renew, or enter into, any contract or other binding commitment or arrangement which (A) is entered into outside the ordinary course of business and requires the Debtors pay an amount in excess of $50,000 in any given twelve month period or (B) is entered into in the ordinary course of business but requires the Debtors pay an amount in excess of $100,000 in any given twelve month period, including, without limitation, (i) any contract, commitment or other binding arrangement, the subject matter of which is not directly used in the operation of any of the Company's radio stations, (ii) any contract, commitment or other binding arrangement with any officer, director, employee, consultant or independent contractor of the Company (except as expressly provided by the Term Sheet), or (iii) any profit sharing, bonus, deferred compensation, savings, insurance, pension, retirement, or other employee benefit plan. For the avoidance of doubt, nothing in this section is intended to, nor shall it, constitute a waiver of the Consenting Lenders' right to object to any such contracts, commitments or other binding arrangements, whether or not prohibited hereunder (except for those agreements to be assumed pursuant to the Term Sheet).

(d)    Subject to the terms and conditions of this Agreement and in accordance with the terms hereof, each Consenting Lender agrees to: (i) vote its First Lien Debt Claims to accept the Prearranged Plan by delivering its duly executed and completed ballot accepting the Prearranged Plan, provided, however, that such vote shall be immediately revoked and deemed *void ab initio* upon termination of this Agreement pursuant to the terms hereof; and (ii) not withdraw, change or revoke (or cause to be withdrawn, changed or revoked) its vote with respect to the Prearranged Plan except as otherwise expressly permitted pursuant to subsection (i) above.

(e)    Each Consenting Lender agrees to use commercially reasonable efforts to support, complete and do all things necessary and appropriate to implement, and to otherwise use commercially reasonable efforts to take all appropriate action in furtherance of, the transactions embodied in this Agreement, including, without limitation, using commercially reasonable efforts to (i) cause the Effective Date to occur on or prior to the later of (A) fifteen (15) calendar days after the entry of the Confirmation Order and (B) three (3) business days after the Necessary Approval is obtained, (ii) obtain the Necessary Approval on or prior to July 23, 2010, and (iii) take all steps necessary and appropriate to obtain any and all required regulatory and/or third-party approvals for the Restructuring, including, without limitation, using commercially reasonable efforts to support the Short-Form FCC Applications, the Long-Form FCC Applications, the Independent Trust Application, the Independent Trust Motion, the Traditional Trust Motion (if any) and the Traditional Trust FCC Application (if any).

(f)    The Parties agree to reasonably cooperate in (i) seeking approval of the Short-Form FCC Applications, the Long-Form FCC Applications, the Independent Trust Application, the Traditional Trust FCC Application (if any), the Independent Trust Motion and the Traditional Trust Motion (if any), (ii) proposing in the Long-Form FCC Applications the assignment to a divestiture trust of any of the Company's radio stations necessary to comply with the FCC's multiple or cross-ownership rules, and (iii) seeking any waiver of the FCC's Rules regarding contingent or inconsistent applications which may be necessary.

(g)    Subject to the terms and conditions of this Agreement and in accordance with the terms hereof, each Consenting Lender agrees to not object, commence any proceeding or otherwise oppose or alter any of the terms of the Prearranged Plan or any other Reorganization

Document and agrees to not take any action which is inconsistent with, or that would delay approval or confirmation or assumption of the Prearranged Plan, the Disclosure Statement or any of the Reorganization Documents, or that could reasonably be expected to prevent, delay or impede the Restructuring pursuant to the Prearranged Plan or any Reorganization Document.

(h)    Each of the Parties agrees that it will negotiate in good faith (i) the documentation regarding the Restructuring or otherwise contemplated by the Term Sheet, (ii) the Prearranged Plan, and (iii) the other documents contemplated hereby and thereby.

Section 3.    <u>Transfer of Claims, Interests, and Securities</u>.    Each Consenting Lender individually and severally covenants that, from the date hereof until the termination of this Agreement with respect to such Party, such Party shall not, directly or indirectly, sell, pledge, hypothecate, or otherwise transfer ("<u>Transfer</u>") any First Lien Debt Claims, or any option or right to acquire, or voting, participation, or other interest therein, except to another Consenting Lender or to a purchaser or other entity that represents that it will execute and deliver (and who does so execute and deliver) to the Company and the Consenting Lenders within two business days of settlement of such trade or transfer an agreement in writing (in a form substantially similar to <u>Exhibit B</u> hereto) to assume and be bound by all the terms of this Agreement with respect to the relevant First Lien Debt Claims, or other interests being transferred to such purchaser (which agreement shall include the representations and warranties set forth in this Agreement).    The Company shall promptly acknowledge any such trade or transfer in writing and provide a copy of such acknowledgement to the transferor.    By its acknowledgement of the relevant trade or transfer, the Company shall be deemed to have acknowledged that their obligations to the Consenting Lender hereunder shall be deemed to constitute obligations in favor of the relevant transferee as a Consenting Lender hereunder.    Any Transfer of any First Lien Debt Claim that does not comply with the foregoing shall be deemed *void ab initio*.    This Agreement shall in no way be construed to preclude a Party from acquiring additional claims under the Credit Agreement or Specified Swap Agreements, as applicable, or other interests in any Debtor; <u>provided</u>, <u>however</u>, that any such additional claims under the Credit Agreement or Specified Swap Agreements shall automatically be deemed to be subject to all the terms of this Agreement.

Section 4.    <u>Representations and Warranties</u>.

(a)    <u>Representations and Warranties of Each Party</u>.    Each of the Parties severally, but not jointly, represents and warrants to each of the other Parties that the following statements are true and correct as of the date hereof:

(1)    <u>Power and Authority</u>.    It has all requisite power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement.

(2)    <u>Authorization</u>.    The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

(3)    <u>No Conflicts</u>.    The execution, delivery, and performance by it of this Agreement do not and shall not (i) violate any provision of law, rule, or regulation

6

applicable to it or its certificate of incorporation, by-laws, or other organizational documents; or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it is a party or under its certificate of incorporation or by-laws (or other organizational documents).

(4)     <u>Governmental Consent</u>.   The execution, delivery, and performance by it of this Agreement do not and shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with, or by, any Federal, state, or other governmental authority or regulatory body, except: (i) such filings as may be necessary and/or required for disclosure by the FCC, Securities and Exchange Commission and applicable state securities or "blue sky" laws; (ii) any filings in connection with the Chapter 11 Cases, including the approval of the Disclosure Statement and confirmation of the Prearranged Plan; and (iii) in the case of the Company, (A) filings of amended articles of incorporation or formation or other organizational documents with applicable state authorities, and (B) other registrations, filings, consents, approvals, notices, or other actions that are reasonably necessary to maintain permits, licenses, qualifications, and governmental approvals to carry on the businesses of the Company.

(b)     <u>Additional Representations and Warranties of the Consenting Lenders</u>. Each of the Consenting Lenders represents and warrants, severally but not jointly, to each of the other Parties that the following statements are true, correct, and complete as of the date hereof:

(1) <u>Ownership</u>.  It is: (A) (i) the sole beneficial owner and/or the investment advisor or manager for the beneficial owners of the claims set forth on its signature page attached hereto, having the power to vote and dispose of such claims on behalf of such beneficial owners; and (ii) entitled (for its own account or for the account of other persons claiming through it) to all of the rights and economic benefits of such claims; or (B) otherwise entitled to act on behalf of such claims and/or the beneficial owner or owners and/or investment advisor or manager thereof.

(2) <u>Transfers</u>.   It has made no prior assignment, sale, participation, grant, conveyance, or other transfer of, and has not entered into any other agreement to assign, sell, participate, grant, or otherwise transfer, in whole or in part, any portion of its right, title, or interests in the claims that are subject to this Agreement that are inconsistent with the representations and warranties made above or would render such Consenting Lender otherwise unable to comply with this Agreement.

(3) <u>Laws</u>.  It is: (A) a sophisticated investor with respect to the transactions described herein with sufficient knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of owning and investing in any securities that may be issued in connection with the Restructuring in accordance with this Agreement, making an informed decision with respect thereto, and evaluating properly the terms and conditions of this Agreement, and it has made its own analysis and decision to enter in this Agreement; and (B) a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act of 1933, as amended.

7

Section 5.    <u>Termination of the Agreement.</u>

(a)    <u>Termination Events.</u>  In addition to any termination of this Agreement that may occur pursuant to Section 6 hereof, this Agreement and the obligations of the Parties hereunder may be terminated in accordance with Section 5(b) below in the event of any of the following (each, a "<u>Termination Event</u>"):

(1)    the Debtors fail to commence the Chapter 11 Case on or prior to March 1, 2010;

(2)    the Debtors fail to file the Prearranged Plan, Disclosure Statement and Solicitation Procedures Motion on the Petition Date;

(3)    the Debtors fail to (A) file the Short-Form FCC Applications within three (3) business days after the Petition Date, (B) file the Independent Trust Motion within five (5) business days after the Petition Date, (C) file the Independent Trust FCC Application within three (3) business days after the Bankruptcy Court enters the Independent Trust Order, (D) file the Traditional Trust FCC Application on the date which is the later of (x) three (3) business days after the entry of the Confirmation Order (as defined below) and (y) the thirtieth (30th) calendar day following the filing of the Independent Trust FCC Application, or, if earlier requested by the Requisite Consenting Lenders, within three (3) business days after such request (unless in each case the Necessary Approval has already been obtained and remains in effect), or (E) if requested by the Requisite Consenting Lenders, file the Traditional Trust Motion within five (5) business days after receipt of such request (unless the Necessary Approval has already been obtained and remains in effect);

(4)    the Debtors fail to file the Long-Form FCC Applications no later than three (3) business days after receipt of approval from the FCC of the Short-Form FCC Applications (or, if later, two (2) business days after the date on which the Requisite Consenting Lenders are prepared to file the Long-Form FCC Applications);

(5)    the order (the "<u>Confirmation Order</u>") (a) confirming the Prearranged Plan and (b) approving all exhibits, appendices, Plan supplement documents and related documents (collectively, the "<u>Plan Supplement</u>"), the terms and substance of which shall be acceptable in all respects to (i) the Requisite Consenting Lenders and, (ii) solely with respect to any Plan Supplement documents or related documents (A) which affect the treatment of claims of holders of unsecured claims or interests of holders of existing equity interests under the Plan or (B) to which the Debtors are a party, the Debtors, shall not have been entered by the Bankruptcy Court within one-hundred and five (105) calendar days of the Petition Date, or the Confirmation Order shall have been reversed on appeal or vacated at any time after entry of such order;

(6)    the Effective Date shall not have occurred on or prior to the earlier of: (a) the later to occur of (i) fifteen (15) calendar days after the entry of the Confirmation Order and (ii) three (3) business days after the Necessary Approval from the FCC is obtained, provided that such Necessary Approval shall have remained in effect; and (b) July 28, 2010;

8

CH\1150070.13

(7)    the issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling or order enjoining the consummation of a material portion of the Restructuring, including, without limitation, an order denying confirmation of the Prearranged Plan or declaring this Agreement to be unenforceable against any of the Debtors;

(8)    any of the Debtors (x) files, propounds or otherwise supports for any Debtor any plan of reorganization in the Chapter 11 Cases other than the Prearranged Plan, (y) files any motion or pleading with the Bankruptcy Court that is not consistent in any material respect with this Agreement or the Prearranged Plan, or (z) withdraws the Prearranged Plan or publicly announces its intention not to support the Prearranged Plan;

(9)    the Debtors' exclusive right to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code shall have terminated;

(10)    any Debtor shall have sought dismissal of its Chapter 11 Case or an order dismissing one or more of the Debtors' Chapter 11 Cases shall have been entered;

(11)    any of the Chapter 11 Cases of the Company is converted to a case under chapter 7 of the Bankruptcy Code or is dismissed;

(12)    any of the Debtors shall file a motion or the Bankruptcy Court shall enter an order approving a payment to any party (whether in cash or other property or whether as adequate protection, settlement of a dispute, or otherwise) that would be materially inconsistent with the treatment of such party under this Agreement;

(13)    entry of an order by the Bankruptcy Court allowing for the recovery of any costs, expenses or other amounts from the Lenders' collateral under section 506(c) of the Bankruptcy Code or the filing by the Debtors of a motion or complaint to avoid the liens of the Lenders under the Credit Facility or the entry of an order by the Bankruptcy Court, whether in response to a motion or complaint brought by the Debtors or otherwise, avoiding such liens;

(14)    the entry of an order by the Bankruptcy Court appointing an examiner with enlarged powers relating to the operation of any material part of the business of the Debtors, taken as a whole (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code, or the entry of an order by the Bankruptcy Court appointing a trustee under section 1104 of the Bankruptcy Code;

(15)    any Party has breached any material provision of this Agreement (including, without limitation, in the case of the Company, its failure to use commercially reasonable efforts under Section 2(a) hereof) and such breach has not been duly waived or cured in accordance with the terms hereof within five (5) days after receipt of notice of such breach; provided, however, that so long as the Debtors are using their commercially reasonable efforts to meet the conditions set forth in Section 2(a) hereof, failure to meet the deadlines in Section 2(a) hereof shall not constitute a Termination Event under this Section 5(a)(15);

(16)      the Company is or becomes subject to one or more fixed, liquidated liabilities, or contingent or disputed liabilities that are reasonably likely to become fixed, liquidated liabilities, in an aggregate amount greater than $750,000, provided that all liabilities disclosed on the Company's balance sheet as of December 31, 2009 or otherwise disclosed to the Consenting Lenders in the side letter among the Parties dated as of the date hereof shall be excluded for purposes of making such determination; provided, further, that all liabilities incurred by the Company since December 31, 2009 in the ordinary course of business consistent with past practice (other than for breach of contract, tort, infringement, violation of or liability under applicable law to the extent not covered by insurance), shall be excluded for purposes of making such determination;

(17)      in connection with the Consenting Lenders' due diligence review of the Debtors, any contamination, condition, violation or liability, as determined by an environmental consultant who is not an affiliate of Oaktree, including contamination that exceeds currently-allowed regulatory limits or cleanup standards and is not otherwise permanently authorized by permit or law (such items, "Environmental Defects") are discovered prior to the Effective Date and the cost to remediate, correct or settle such Environmental Defects (the "Remediation Value") exceeds or is reasonably likely to exceed $750,000 in the aggregate; provided that Oaktree will provide notice of the discovery of such Environmental Defects to the Debtors and the Consenting Lenders; and

(18)      the Company and the Requisite Consenting Lenders agree in writing to terminate the Agreement.

The foregoing Termination Events are intended solely for the benefit of the Party or Parties who are entitled to terminate this Agreement pursuant to Section 5(b) as a result of the occurrence of such Termination Event.

(b)      Termination Event Procedures.

(1)      Upon the occurrence of any of the Termination Events described in Sections 5(a)(1) through 5(a)(5), unless primarily caused by a breach of this Agreement by any Consenting Lender, this Agreement, and the obligations of the Parties hereunder, shall terminate upon the delivery by Kirkland & Ellis LLP ("Kirkland"), at the written direction of the Requisite Consenting Lenders at their option, of a written notice of such termination to each of Regent and the other Consenting Lenders in accordance with Section 8(c) hereof; it being agreed by each of the Parties hereto that each such Party hereby waives any requirement under section 362 of the Bankruptcy Code to lift the automatic stay in connection with the giving of such termination notice.

(2)      Upon (x) the occurrence of the Termination Event described in Section 5(a)(15) due to a material breach of this Agreement by any of the Debtors not primarily caused by a breach of this Agreement by any Consenting Lender or (y) the occurrence of any of the Termination Events described in Sections 5(a)(6) through 5(a)(14) or Sections 5(a)(16) through 5(a)(17) not primarily caused by a breach of this Agreement by any Consenting Lender, this Agreement and the obligations of the parties hereunder shall automatically terminate without further action unless no later than five (5) business days after the occurrence of any such Termination Event, the occurrence of such Termination Event is waived in writing by the Requisite

10

Consenting Lenders in their sole discretion, notice of which waiver will be delivered by Kirkland to Regent.

(3)     Upon the occurrence of the Termination Event described in Section 5(a)(15) due to a material breach of this Agreement by Consenting Lenders who together hold more than thirty-four percent (34%) of the aggregate principal amount of the outstanding Obligations, this Agreement and the obligations of the Parties hereunder shall terminate upon the delivery by Regent of a written notice of such termination to each of the Consenting Lenders in accordance with Section 8(c) hereof.

(c)     Effect of Termination.

(1)     Subject to Section 5(c)(2), any termination of this Agreement shall render such Agreement void and of no further force or effect, and there shall be no liability or obligation on the part of any Party.

(2)     No termination of this Agreement (whether pursuant to Section 5 or 6 hereof) shall limit the Parties' rights and remedies for any breach of this Agreement or non-performance of any obligations hereunder by any Party in each case prior to such termination, including, but not limited to, the reservation of rights set forth herein.

Section 6.     Fiduciary Obligations. Notwithstanding anything to the contrary contained in this Agreement:

(a)     the Company may furnish, or cause to be furnished, subject to customary confidentiality and other terms, information concerning the Company and its affiliates and the businesses, properties or assets of the Company and its affiliates to a party from whom it receives an unsolicited offer that the Company and its Board of Directors reasonably believe in good faith is a Topping Proposal, provided that the Company and its Board of Directors must reasonably believe in good faith that such party has expressed a legitimate interest in, and has the financial wherewithal to consummate, such Topping Proposal (a "Potential Acquiror"); provided, further, that, except to the extent expressly provided in this Section 6(a) and Section 6(c) hereof, the Company shall not, and shall cause its directors, officers, affiliates, representatives, advisors and agents to not, directly or indirectly, seek, solicit, support, encourage, consent to, participate in any discussions regarding the negotiation or formulation of, or enter into any letter of intent or definitive agreement with respect to, a Topping Proposal or any other Alternative Transaction;

(b)     following receipt of any proposal, offer or indication of interest for an Alternative Transaction by any party other than the Requisite Consenting Lenders, the Debtors shall disclose to Kirkland in writing on a confidential basis (it being agreed that Kirkland may share such disclosure with the Requisite Consenting Lenders): (i) the identity of such party; (ii) the nature of any interest expressed by such party; and (iii) the terms and conditions of any proposal or offer or other expression of interest for an Alternative Transaction from such party; which disclosure shall be given by the Debtors to Kirkland within one (1) business day of receipt by the Debtors;

(c)     following a reasonable good faith determination by the Company and its Board of Directors, after consultation with its advisors, that a proposal or offer for an Alternative

11

Transaction is a Topping Proposal from a Potential Acquiror, the Company (i) may negotiate and discuss such Topping Proposal with the Potential Acquiror and (ii) may terminate this Agreement and the obligations of the Parties hereunder by providing five (5) business days prior written notice to each other Party hereto in accordance with Section 8(c) hereof, in each case to the extent that the Company and its Board of Directors has made a reasonable good faith determination, after consulting with its advisors, that the failure to do so would be a violation of its fiduciary duties; provided, however, that if the Confirmation Order includes a provision expressly authorizing compliance with this proviso (which the Debtors shall use commercially reasonable efforts to obtain), then this Agreement shall not terminate as a result of such notice if the Effective Date of the Prearranged Plan has occurred prior to the expiration of such five (5) business day period; and

(d)    if the Company or any of its directors, officers, affiliates, representatives, advisors or agents (i) enters into a letter of intent (binding or non-binding) or a definitive agreement for an Alternative Transaction (or otherwise breaches any provision of this Section 6) or (ii) requests any modifications of the Prearranged Plan adverse to the interests of the Lenders or any additional consideration to be provided to any other creditors or holders of existing equity interests beyond that contemplated by the Prearranged Plan, the Requisite Consenting Lenders may terminate this Agreement and the obligations of the Parties hereunder at anytime thereafter by delivering written notice of such termination to each other Party hereto in accordance with Section 8(c) hereof.

(e)    For purposes of this Section 6:

(1)    "Alternative Transaction" means any restructuring, merger, consolidation or combination to which the Company or any of its subsidiaries is a party; any proposed sale or other disposition of capital stock or other ownership interests of the Company and its subsidiaries; or any proposed sale or other disposition of all or substantially all of the assets or properties of Company and its subsidiaries; and

(2)    "Topping Proposal" means a proposal, offer or indication of interest from a Potential Acquiror for an Alternative Transaction that the Company and its Board of Directors reasonably determines in good faith, after reasonable diligence, (x) is reasonably likely to be consummated within a reasonable time, and (y) if consummated, would result in payment in full of the First Lien Debt Claims of the Lenders and would otherwise be more favorable than the Restructuring to the Debtors' estates and their creditors, equity holders and other parties to whom the Debtors owe fiduciary duties (including, without limitation, the Lenders); provided that such reasonable good faith determination shall take into account, among other relevant factors, the identity of the Potential Acquiror, the likelihood that any such offer or proposal will be negotiated to finality within a reasonable time, and the potential loss to the Debtors' estates and their creditors and other parties to whom the Debtors owe fiduciary duties (including, without limitation, the Lenders) if such Alternative Transaction is not consummated.

Section 7.    Consenting Lender Consent to Use of Cash Collateral.    As long as a Termination Event has not occurred, or has occurred but has been duly waived or cured in accordance with the terms hereof, the Consenting Lenders hereby consent to the Debtors' use of cash collateral in accordance with (a) a budget based upon a 13-week rolling cash flow

CH\1150070.13

projection acceptable to the Requisite Consenting Lenders in their sole discretion (the "Budget") and (b) an interim and final cash collateral order, the form and substance of which shall be in all respects subject to the consent of the Requisite Consenting Lenders, providing for (i) replacement liens on substantially all of the assets of the Debtors subordinate to a carve-out for the Debtors' professionals and the professionals of any official committees equal to actual fees and expenses of each such professional prior to the issuance of a Carve Out Trigger Notice[2] plus, after the issuance of a Carve Out Trigger Notice, $1,250,000 in the aggregate split among such professionals on a pro rata basis in accordance with the amount budgeted for each such professional in the Budget (the "Carve-Out"), (ii) superpriority claims subordinate to the Carve-Out, (iii) payment of fees and expenses of the Consenting Lenders' professionals, including, without limitation, Kirkland, Drinker Biddle & Reath LLP, Finn Dixon & Herling LLP and a financial advisor to be determined at the Requisite Consenting Lenders' election, on a regular monthly basis during the Chapter 11 Cases, (iv) payment, on or immediately preceding the Effective Date, to the Lenders on a pro rata basis on account of any Credit Facility Obligations and/or Specified Swap Obligations of "Excess Cash"[3] and (v) information, reports, documents and other additional materials the Consenting Lenders may reasonably request, either directly or through their professionals, to the extent provided in the Credit Facility and Specified Swap Agreements.

Section 8.    Miscellaneous.

(a)    Governing Law; Jurisdiction. This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws of the State of New York. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit, or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit, or proceeding, shall be brought in a federal court of competent jurisdiction in the United States District Court for the Southern District of New York. By execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably accepts and submits to the nonexclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit, or proceeding. Notwithstanding the foregoing consent to jurisdiction, upon the commencement of the Chapter 11 Cases, each of the Parties hereto hereby agrees that the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of or in connection with this Agreement.

(b)    No Waiver of Participation and Preservation of Rights. This Restructuring Support Agreement and the Term Sheet are part of a proposed settlement of disputes among the Parties. Without limiting the foregoing sentence in any way, if the transactions contemplated by this Agreement or otherwise set forth in the Prearranged Plan are not consummated as provided herein, if a Termination Event occurs, or if this Agreement is otherwise terminated for any

---

[2]    As will be defined in the cash collateral order.

[3]    For the purposes hereof, "Excess Cash" shall mean any cash in excess of $3 million on the Debtors' balance sheet after payment and distribution of all amounts to be paid or distributed under the Prearranged Plan, which such monetary threshold may be increased by the consent of the Requisite Consenting Lenders.

reason, the Parties each fully reserve any and all of their respective rights, remedies, claims, and interests.

(c)    Notices.  All demands, notices, requests, consents, and communications hereunder shall be in writing and shall be deemed to have been duly given if delivered personally or by courier service, messenger, facsimile, telecopy, or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, and shall be deemed to have been duly given or made: (i) upon delivery, if delivered personally or by courier service, or messenger, in each case with record of receipt; (ii) upon transmission with confirmed delivery, if sent by facsimile or telecopy; or (iii) when received after being sent by certified or registered mail, postage pre-paid, return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

If to the Company:


Regent Communications, Inc.
100 East River Center, 9th Floor
Covington, KY 41011
Facsimile: (859) 814-0136
Attn:  Tony Vasconcellos (Tony.Vasconcellos@RegentComm.com)

with copies (which shall not constitute notice) to:

Latham & Watkins LLP
233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
Facsimile:  312-993-9767
Attn:   Josef S. Athanas (josef.athanas@lw.com)
         William P. O'Neill (william.o'neill@lw.com)

If to a Consenting Lender or a transferee thereof:

To the addresses or facsimile numbers set forth below following the Consenting Lender's signature (or as directed in writing by any transferee thereof),

with copies (which shall not constitute notice) to:

Kirkland & Ellis, LLP
300 North LaSalle Street
Chicago, IL  60654
Facsimile: (312) 862-2200
Attn:   David L. Eaton, Esq. (david.eaton@kirkland.com)
         Christopher J. Greeno, P.C. (cgreeno@kirkland.com)

and

14

Oaktree Capital Management, L.P.
333 S. Grand Avenue, 28th Floor
Los Angeles, CA  90071
Facsimile: (213) 830-6377
Attn:   Andrew Salter (asalter@oaktreecapital.com)
        David Quick (dquick@oaktreecapital.com)

(d)    <u>Complete Agreement</u>.  This Agreement, the Term Sheet and any and all side letters executed by the Parties in connection herewith constitute the full and complete understanding and agreement among the Parties with regard to the subject matter hereof and supersedes all prior agreements, understandings, or representations by or among the Parties, written or oral, which may have related to the subject matter hereof in any way.

(e)    <u>Interpretation of this Agreement</u>.   This Agreement is the product of negotiation by and among the Parties.  Any Party enforcing or interpreting this Agreement shall interpret in a neutral manner.  There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.

(f)    <u>Headings</u>.   The headings of the paragraphs and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

(g)    <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective permitted successors and assigns <u>provided, however</u>, that nothing contained in this paragraph shall be deemed to permit sales, assignments, or transfers that would otherwise not be in accordance with this Agreement.

(h)    <u>Specific Performance</u>.  Each Party hereto recognizes and acknowledges that a breach by it of any covenants or agreements contained in this Agreement may cause the other Parties to sustain damages for which such other Parties would not have an adequate remedy at law for money damages, and therefore, each Party hereto agrees that in the event of any such breach, such other parties shall be entitled to seek the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which such parties may be entitled, at law or in equity.

(i)    <u>Several, Not Joint, Obligations</u>.   The agreements, representations, and obligations of the Parties under this Agreement are, in all respects, several and not joint.

(j)    <u>Remedies Cumulative</u>.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

(k)    <u>No Waiver</u>.  The failure of any Party hereto to exercise any right, power, or remedy provided under this Agreement or otherwise available in respect hereof at law or in

15

equity, or to insist upon compliance by any other Party hereto with its obligations hereunder, and any custom or practice of the parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such compliance.

(l)    Reservation of Rights.  Except as expressly provided in this Agreement, nothing herein is intended to, does or shall be deemed in any manner to waiver, limit, impair or restrict the ability of each of the Consenting Lenders to protect and preserve its rights, remedies and interests, including any such rights and remedies relating to defaults or other events that may have occurred prior to the execution of this Agreement, any and all of its claims and causes of action against any of the Debtors or any third parties, or its full participation in the Chapter 11 Cases.  Without limiting the foregoing in any way, if the transactions contemplated by this Agreement are not consummated as provided herein or if this Agreement is otherwise terminated for any reason, the Parties each fully reserve any and all of their respective rights, remedies and interests under the Credit Agreement, applicable law and in equity.

(m)    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Delivery of an executed signature page of this Agreement by facsimile or email shall be as effective as delivery of a manually executed signature page of this Agreement.

(n)    Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and any such prohibited or unenforceable provision shall be deemed reformed and construed so that it will be valid, legal, and enforceable and not prohibited to the maximum extent permitted by applicable law.

(o)    No Third-Party Beneficiaries.  Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third party beneficiary hereof.

(p)    No Solicitation.

(1)    This Agreement is not intended to be, and each signatory to this Agreement acknowledges that this Agreement is not, whether for the purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise, a solicitation for the acceptance or rejection of a plan of reorganization for any of the Debtors.

(2)    This Agreement is not an offer with respect to any securities, and such offers or solicitation, if necessary to effectuate the Restructuring, will be made only in compliance with all applicable securities laws.

(q)    Settlement Discussions.  This Agreement and the Restructuring are part of a proposed settlement of a dispute among the Parties.  Nothing herein shall be deemed an admission of any kind.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into

16

evidence in any proceeding other than a proceeding involving enforcement of the terms of this Agreement.

(r)    <u>Consideration</u>.  It is hereby acknowledged by the Parties hereto that, other than the agreements, covenants, representations, and warranties set forth herein, no consideration shall be due or paid to any Consenting Lender for its entry into this Agreement.

(s)    <u>Receipt of Adequate Information; Representation by Counsel</u>.  Each Party acknowledges that it has received adequate information to enter into this Agreement and that it has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.  Accordingly, any rule of law or any legal decision that would provide any party with a defense to the enforcement of the terms of this Agreement against such party shall have no application and is expressly waived.  The provisions of the Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties.

(t)    <u>Time of the Essence</u>.  Time is of the essence with respect to all provisions of this Agreement that specify a time for performance.

**[Signature Page Follows]**

17

IN WITNESS WHEREOF, the Parties hereto have duly executed and delivered this Agreement as of the date first above written.

By: REGENT COMMUNICATIONS, INC.

Name: Anthony A. Vasconcellos
Title:  Executive Vice President and Chief Financial Officer

On behalf of the other Debtors listed on Schedule 1 hereto:  Authorized Signatory

*[Signature Page – Restructuring Support Agreement]*

## Schedule I

Regent Communications, Inc.

B & G Broadcasting, Inc.

Livingston County Broadcasters, Inc.

Regent Broadcasting, LLC

Regent Broadcasting Management, LLC

Regent Broadcasting of Albany, Inc.

Regent Broadcasting of Bloomington, Inc.

Regent Broadcasting of Buffalo, Inc.

Regent Broadcasting of Chico, Inc.

Regent Broadcasting of Duluth, Inc.

Regent Broadcasting of El Paso, Inc.

Regent Broadcasting of Erie, Inc.

Regent Broadcasting of
Evansville/Owensboro, Inc.

Regent Broadcasting of Flagstaff, Inc.

Regent Broadcasting of Flint, Inc.

Regent Broadcasting of Ft. Collins, Inc.

Regent Broadcasting of Grand Rapids, Inc.

Regent Broadcasting of Kingman, Inc.

Regent Broadcasting of Lafayette, LLC

Regent Broadcasting of Lake Tahoe, Inc.

Regent Broadcasting of Lancaster, Inc.

Regent Broadcasting of Lexington, Inc.

Regent Broadcasting of Mansfield, Inc.

Regent Broadcasting of Midwest, LLC

Regent Broadcasting of Palmdale, Inc.

Regent Broadcasting of Peoria, Inc.

Regent Broadcasting of Redding, Inc.

Regent Broadcasting of San Diego, Inc.

Regent Broadcasting of South Carolina, Inc.

Regent Broadcasting of St. Cloud, Inc.

Regent Broadcasting of St. Cloud II, Inc.

Regent Broadcasting of Utica/Rome, Inc.

Regent Broadcasting of Watertown, Inc.

Regent Broadcasting West Coast, LLC

Regent Licensee of Chico, Inc.

Regent Licensee of Erie, Inc.

Regent Licensee of Flagstaff, Inc.

Regent Licensee of Kingman, Inc.

Regent Licensee of Lake Tahoe, Inc.

Regent Licensee of Lexington, Inc.

Regent Licensee of Mansfield, Inc.

Regent Licensee of Palmdale, Inc.

Regent Licensee of Redding, Inc.

Regent Licensee of San Diego, Inc.

Regent Licensee of South Carolina, Inc.

Regent Licensee of St. Cloud, Inc.

Regent Licensee of Utica/Rome, Inc.

Regent Licensee of Watertown, Inc.

Figueroa Street POF Ltd.
By:  Oaktree Media Investments, L.P.,
director
By: Oaktree Media Holdings, Inc., general
partner

By: _____
Name:
Title:      **Richard Ting**
          **Authorized Signatory**

By: _____
Name:
Title:        **David Quick**
          **Authorized Signatory**

First Street Holdings 1, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:        Richard Ting
Title:      Managing Director
          Associate General Counsel

By: _____
Name:
Title:        **David Quick**
          **Authorized Signatory**

First Street Holdings 2, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:        Richard Ting
Title:      Managing Director
          Associate General Counsel

By: _____
Name:
Title:        **David Quick**
          **Authorized Signatory**

*[Signature Page - Restructuring Support Agreement]*

First Street Holdings 3, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:       Richard Ting
Title:      Managing Director
            Associate General Counsel

By: _____
Name:
Title:      David Quick
            Authorized Signatory

First Street Holdings 4, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:       Richard Ting
Title:      Managing Director
            Associate General Counsel

By: _____
Name:       David Quick
Title:      Authorized Signatory

First Street Holdings 5, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:       Richard Ting
Title:      Managing Director
            Associate General Counsel

By: _____
Name:
Title:      David Quick
            Authorized Signatory

*[Signature Page - Restructuring Support Agreement]*

First Street Holdings 6, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
       Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

First Street Holdings 7, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
       Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

First Street Holdings 8, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
       Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

*[Signature Page - Restructuring Support Agreement]*

First Street Holdings 9, L.P.
By: POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:
Title:    Richard Ting
          Managing Director
          Associate General Counsel

By: _____
Name:
Title:    David Quick
          Authorized Signatory

First Street Holdings 10, L.P.
By: POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:
Title:    Richard Ting
          Managing Director
          Associate General Counsel

By: _____
Name:
Title:    David Quick
          Authorized Signatory

First Street Holdings 11, L.P.
By: POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name:
Title:    Richard Ting
          Managing Director
          Associate General Counsel

By: _____
Name:
Title:    David Quick
          Authorized Signatory

First Street Holdings 12, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

First Street Holdings 13, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

First Street Holdings 14, L.P.
By:  POF4 GP, LLC, general partner
By: Oaktree Capital Management, L.P.,
managing member

By: _____
Name: Richard Ting
Title: Managing Director
Associate General Counsel

By: _____
Name: David Quick
Title: Authorized Signatory

General Electric Capital Corporation

By: _____
Name: Charles Vandis
Title: Duly Authorized Signatory

**Exhibit A**

RESTRUCTURING PROPOSAL TERM SHEET

### RESTRUCTURING TERM SHEET
### FEBRUARY 28, 2010

THIS TERM SHEET (THE "TERM SHEET") DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN OF REORGANIZATION, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY AND/OR OTHER APPLICABLE LAWS.  THIS TERM SHEET DOES NOT ADDRESS ALL MATERIAL TERMS AND CONDITIONS THAT WOULD BE REQUIRED IN CONNECTION WITH ANY POTENTIAL FINANCIAL RESTRUCTURING AND IS SUBJECT TO THE EXECUTION OF DEFINITIVE DOCUMENTATION IN FORM AND SUBSTANCE CONSISTENT WITH THIS TERM SHEET AND OTHERWISE ACCEPTABLE IN ALL RESPECTS TO THE REQUISITE CONSENTING LENDERS (AS DEFINED IN THE RESTRUCTURING SUPPORT AGREEMENT TO WHICH THIS TERM SHEET IS ATTACHED) AND THE DEBTORS (AS DEFINED IN THE RESTRUCTURING SUPPORT AGREEMENT TO WHICH THIS TERM SHEET IS ATTACHED).

This Term Sheet sets forth the principal terms of a proposed financial restructuring (the "Restructuring") for the existing debt and other obligations of the Companies through a prearranged plan of reorganization of the Companies (a "Plan") containing the terms and conditions described herein and other standard and customary provisions, including without limitation provisions concerning "pass-through" treatment for administrative and priority claims, trade payables and leases.

All capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Credit Agreement.

## GENERAL RESTRUCTURING TERMS

| | |
|---|---|
| **CREDIT AGREEMENT:** | The Credit Agreement dated November 21, 2006, among Parent, Borrower, Bank of America, N.A. ("BofA") as administrative agent ("Administrative Agent"), BofA as issuing lender ("Issuing Lender") and the other entities party thereto as lenders ("Lenders"), as heretofore amended. |
| **SPECIFIED SWAP AGREEMENTS:** | The swap agreements currently outstanding with Lender Counterparties representing approximately $12.1 million of liabilities owed by Borrower. All obligations under the Specified Swap Agreements are referred to herein as the "Specified Swap Obligations". |
| **LENDER COUNTERPARTIES:** | BofA, Suntrust, Bank of Montreal and their respective successors and permitted assigns. |
| **PARENT:** | Regent Communications, Inc. |
| **BORROWER:** | Regent Broadcasting, LLC |
| **COMPANIES:** | Parent, Borrower and all subsidiaries of Borrower. |
| **REORGANIZED PARENT:** | Parent as reorganized in connection with the Restructuring, a successor thereto or a newly formed company to be formed for the purpose of owning the Companies. |
| **REORGANIZED BORROWER:** | Borrower as reorganized in connection with the Restructuring or a successor thereto. |
| **NEW EQUITY:** | 100% of all equity of Reorganized Parent as of the effective date of the Plan (the "Effective Date"). The New Equity will be structured in a manner reasonably acceptable to the Requisite Consenting Lenders (as defined in the Restructuring Support Agreement), including (without limitation) limitations on certain fundamental actions, and so as to ensure, by way of limited voting rights, that the holders thereof (other than Oaktree Capital Management, L.P. and its controlled affiliates (collectively, "Oaktree")) will hold a "nonattributable" interest in the Companies under applicable FCC rules and policies. In addition, to the extent any Consenting Lender's direct or indirect owners include entities or persons which would be included in the calculation of foreign ownership for purposes of Section 310(b) of the Communications Act of 1934, as amended, and the FCC's rules and policies promulgated thereunder, such Consenting Lender may, if requested by Oaktree, be required to receive a warrant for New Equity in lieu of New Equity in order to satisfy FCC foreign ownership limitations. Finally, the Reorganized Parent and the holders of the New Equity will be required to enter into definitive investment agreements providing for, subject to customary exceptions, tag-along rights on transfers by Oaktree, preemptive rights on equity issuances (subject to certain exceptions reasonably acceptable to the Requisite Consenting Lenders), demand and piggyback registration rights and transfer restrictions, as well as drag-along provisions in favor of Oaktree, in each case in form and substance reasonably acceptable to the Requisite Consenting Lenders. |

REGENT RESTRUCTURING TERM SHEET

**RESTRUCTURING:**  The Commitments under the Credit Agreement will be terminated. All Obligations (as defined in the Credit Agreement), including all Loans under the Credit Agreement and the Specified Swap Obligations, will be exchanged for the following, allocated among the applicable Secured Parties on a pro rata basis:

- $95 million of Senior Secured Term Loans incurred by Reorganized Borrower on substantially the terms set forth below,

- $25 million of PIK Loans incurred by Reorganized Borrower on substantially the terms set forth below, and

- 100% of the New Equity issued by Reorganized Parent, which will be subject to dilution by the Management Equity Incentive Program described below and future post-Restructuring issuances.

**UNSECURED CLAIMS:**  The Lenders shall waive their deficiency claims against the Debtors. All other unsecured claims shall be paid in full in cash on or prior to the Effective Date.

**EXISTING EQUITY:**  The Plan shall provide that the Secured Parties will make a gift of, or allow the Companies to distribute from the Secured Parties' collateral, $5.5 million to the current shareholders of Parent on a pro rata basis. Upon distribution of such amount, the outstanding shares of Parent will be cancelled.

**COMPENSATION PLANS:**  The Plan shall provide that the Companies assume the (i) existing employment agreements of Anthony A. Vasconcellos and William L. Stakelin, as amended on February 28, 2010 (the "Employment Agreements"), (ii) 2004 Corporate Employee Retention and Severance Plan, (iii) 2010 Special Bonus Plan with bankruptcy incentives as adopted by the board in December 2009, and (iv) Regent Communications, Inc. Deferred Compensation Plan.

**MANAGEMENT EQUITY INCENTIVE PROGRAM:**  Options, equity or other equity-based grants equal to 8% of the total New Equity on a fully diluted basis will be reserved for a management equity incentive plan, the specific terms of which will be determined by the board of Reorganized Parent.

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES:**  Executory contracts and unexpired leases shall be assumed or rejected pursuant to a schedule to be attached to the Plan Supplement, which shall be acceptable in all respects to the Requisite Consenting Lenders in their sole discretion, including any amendments prior to the Effective Date.

**PRIVATE COMPANY:**  The Reorganized Parent would not be listed on a national securities exchange or be an SEC-reporting company.

**RELEASES:**  To the extent allowable by law, the Plan will contain customary releases and other exculpatory provisions in favor of (i) the Company, its present directors, officers and professional advisors and (ii) the Consenting

REGENT RESTRUCTURING TERM SHEET

Lenders, their respective directors, officers, partners, members, representatives, employees, professional advisors and other parties to be agreed upon by the Borrower and the Requisite Consenting Lenders.

**EXPENSE REIMBURSEMENT:** All reasonable and documented out-of-pocket expenses of the Requisite Consenting Lenders, their counsel (including but not limited to, Kirkland & Ellis LLP, Drinker Biddle & Reath LLP and Finn Dixon & Herling LLP) and their financial advisor shall be paid in full in cash.

TERMS OF SENIOR SECURED TERM LOANS

| | |
|---|---|
| **PRINCIPAL AMOUNT:** | $95 million |
| **AGENT:** | To be determined. |
| **MATURITY DATE:** | 4 years from the Effective Date. |
| **RATE:** | One-month LIBOR plus 4.0% and, upon an event of default, increased to one-month LIBOR plus 6.0%; provided that, in each case, there shall be a LIBOR floor of 1.25%. |
| **GUARANTORS:** | A newly formed holding company of Reorganized Borrower which is 100% owned by Reorganized Parent and all subsidiaries of Reorganized Borrower. |
| **COLLATERAL:** | Subject to the New Revolving Loans (as defined below), first priority perfected security interest on all personal and real property of Reorganized Borrower and Guarantors, subject to exceptions to be agreed and limitations and qualifications relating to FCC licenses to be agreed, in each case by the Reorganized Borrower and the Requisite Consenting Lenders. |
| **VOLUNTARY PREPAYMENTS:** | Voluntary prepayments shall be permitted without premium or penalty subject to customary thresholds and notice requirements. |
| **MANDATORY REPAYMENTS:** | <ul><li>1% amortization per annum of the Principal Amount with remainder payable in full on the Maturity Date</li><li>Semi-Annual payment of 50% of excess cash flow, with definition to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders</li><li>Mandatory repayment from asset sale proceeds subject to exceptions and permitted reinvestment to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders</li></ul> |
| **FINANCIAL COVENANTS:** | Beginning on December 31, 2010 (for the immediately preceding quarter), quarterly financial covenants to be agreed upon by the Reorganized Borrower and the Requisite Consenting Lenders. |
| **REPRESENTATIONS & WARRANTIES, COVENANTS & EVENTS OF DEFAULT:** | Representations and warranties, affirmative and negative covenants, and events of default to be customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |
| **EXPENSE REIMBURSEMENT & INDEMNIFICATION:** | Expense reimbursement and indemnification in favor of Agent, lenders and their related parties on terms customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |

## TERMS OF PIK LOANS

| | |
|---|---|
| **PRINCIPAL AMOUNT:** | $25 million |
| **NOTES AGENT:** | To be determined by the Requisite Consenting Lenders. |
| **MATURITY DATE:** | 4 years and 6 months from the Effective Date. |
| **RATE:** | 12% payable in kind on a quarterly basis. |
| **RANKING:** | Unsecured debt, subordinated to the Senior Secured Term Loans. |
| **REPRESENTATIONS & WARRANTIES, COVENANTS, EVENTS OF DEFAULT AND OTHER PROVISIONS:** | Representations and warranties, affirmative and negative covenants, events of default and other terms to be customary for transactions of this type, subject to mutual agreement of the Reorganized Borrower and the Requisite Consenting Lenders. |

## New Revolving Loans

**TERMS AND CONDITIONS:**

A revolving loan facility in the aggregate principal amount of up to $5,000,000, provided (a) the Requisite Consenting Lenders have approved such loans, (b) such loans are secured by the same collateral as the Senior Secured Term Loan and with the same priority, and (c) such loans are paid in full prior to the repayment of the Senior Secured Term Loan.

# Exhibit B

## *PROVISION FOR TRANSFER AGREEMENT*

The undersigned ("Transferee") hereby acknowledges that it has read and understands the

Restructuring Support Agreement, dated as of February 28, 2010 (as amended or otherwise

modified from time to time in accordance with the terms thereof), by and among Regent

Communications, Inc., a Delaware corporation, Regent Broadcasting, LLC, a Delaware limited

liability company, [**insert name of Transferor Consenting Holder**], and the other parties

thereto, inter alia, and agrees to be bound by the terms and conditions thereof to the extent

Transferor was thereby bound.


By:     _____
        Transferee


Acknowledged by

Regent Communications, Inc.
on _____, 2010
By:     _____
Its:    _____


Regent Broadcasting, LLC
on _____, 2010
By:     _____
Its:    _____

Exhibit E

The Plan of Reorganization

DB02:9314954.1

069016.1001

Due to the voluminous nature of this Exhibit, it is not attached here but is available upon request from Debtors' counsel and is publicly filed and available at www.kccllc.net/regent.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REGENT COMMUNICATIONS, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 10-_____ (____)<br><br>Joint Administration Pending |

## CONSOLIDATED LIST OF CREDITORS HOLDING
## 30 LARGEST UNSECURED CLAIMS

The following is a list of creditors holding the 30 largest unsecured claims against the

above-captioned Debtor and certain affiliated entities that have simultaneously commenced

chapter 11 cases in this Court (collectively, the "**Debtors**"). This list has been prepared on a

consolidated basis from the unaudited books and records of the Debtors. The list reflects

amounts from the Debtors' books and records on or about February 19, 2010.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).

069016.1001

The list is prepared in accordance with Fed. R. Bank. P. 1007(d) for filing in the Debtors' chapter 11 cases.  This list does not include (1) persons who come within the definitions of "insider" set forth in 11 U.S.C. Section 101 or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the largest unsecured claims.

The information herein shall not constitute an admission of liability by, nor is it binding on, any Debtor.  Moreover, nothing herein shall affect any Debtor's right to challenge the amount or characterization of any claim at a later date.

## CONSOLIDATED LIST OF CREDITORS
## HOLDING THE 30 LARGEST UNSECURED CLAIMS

| (1)<br>Name of Creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Amount of Claim (secured also state value of security) |
|---|---|---|---|
| 1 | Arbitron Inc | PO Box 3228<br>Carol Stream, IL 60132-3228<br>P: 410-312-8000<br>F: 410-312-8650 | TRADE DEBT | $84,835.09 |
| 2 | SESAC | PO Box 900013<br>Raleigh, NC 27675-9013<br>P: 800-826-9996<br>F: | TRADE DEBT | $60,685.21 |
| 3 | Brainerd Communicators Inc | 521 Fifth Avenue 8th Floor<br>New York, NY 10175<br>P: 212-986-6667<br>F: 212-986-8302 | TRADE DEBT | $50,000.00 |
| 4 | Premiere Radio Networks | 15260 Ventura Blvd No 400<br>Sherman Oaks, CA 91403<br>P: 818-377-5300<br>F: 818-377-5333 | TRADE DEBT | $26,223.00 |
| 5 | Integrys Energy Services | PO Box 13248<br>Green Bay, WI 54307-3248<br>P: 888-649-4464<br>F: 716-826-9725 | TRADE DEBT | $24,948.44 |
| 6 | Dell Marketing LP | c/o Dell USA LP<br>PO BOX 802816<br>Chicago, IL 60680-2816<br>P: 800-234-9999<br>F: | TRADE DEBT | $14,191.91 |
| 7 | Time Warner Telecom | TW Telecom<br>PO Box 3710<br>TROY, MI 48099<br>P: 800-565-8982<br>F: | TRADE DEBT | $14,103.41 |
| 8 | Larimer County Treasurer | PO Box 2336<br>Fort Collins, CO 80522-2336<br>P: 970-498-7020<br>F: | TRADE DEBT | $13,056.29 |
| 9 | THE SHALOM GROUP LP | 444 EXECUTIVE CENTER BLVD SUITE 120<br>EL PASO, TX 79902<br>P: 915-532-3456<br>F: 915-532-4517 | TRADE DEBT | $12,584.19 |

069016.1001

| (1)<br>Name of Creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Amount of Claim (secured also state value of security) |
|---|---|---|---|
| 10 | CDW Computer Centers Inc | PO Box 75723<br>Chicago, IL 60675-5723<br>P: 800-520-4239<br>F: | TRADE DEBT | $12,286.52 |
| 11 | Radio Advertising Bureau Inc | PO Box 972036<br>Dallas, TX 75397-2036<br>P: 972-753-6727<br>F: | TRADE DEBT | $11,505.00 |
| 12 | Spacial Audio Solutions LLC | PO Box 90781<br>Austin, TX 78709<br>P: 972-739-6420<br>F: 512-519-4370 | TRADE DEBT | $11,145.70 |
| 13 | National City | PO Box 856176<br>Louisville, KY 40285-6176<br>P: 866-646-6880<br>F: | TRADE DEBT | $10,924.88 |
| 14 | Katz Media Corportation | 125 West 55TH ST<br>New York, NY 10019-5366<br>P: 212-424-6000<br>F: 212-424-6601 | TRADE DEBT | $10,898.84 |
| 15 | Radio Computing Services Inc | 14440 Collections Center Dr.<br>Chicago, IL 60693<br>P: 914-428-4600<br>F: 914-428-6224 | TRADE DEBT | $10,147.68 |
| 16 | Katz Radio | 12019 Collections Center Drive<br>Chicago, IL 60693-0120<br>P: 212-424-6000<br>F: 212-424-6895 | TRADE DEBT | $9,419.23 |
| 17 | Poudre Valley REA | 7649 Rea Parkway<br>Fort Collins, CO 80527-2550<br>P; 970-226-1234<br>F: 970-226-2123 | TRADE DEBT | $8,851.53 |
| 18 | Long Heating & Cooling | PO Box 9006<br>Albany, NY 12209-0006<br>P: 518- 465-6647<br>F: | TRADE DEBT | $7,658.71 |
| 19 | Christal Radio | 12019 Collections Center Dr<br>Chicago, IL 60693-0120<br>P: 212-424-6000<br>F: 212-424-6110 | TRADE DEBT | $6,889.18 |

069016.1001

| | (1).<br>Name of Creditor | (2).<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Amount of Claim (secured also state value of security) |
|---|---|---|---|---|
| 20 | Weld County Treasurer | PO Box 458<br>Greeley, CO 80632-0458<br>P: 970-353-3845 x3290<br>F: | Trade Debt | $6,528.72 |
| 21 | AT&T | PO Box 78152<br>Phoenix, AZ 85062-8152<br>P: 888- 504-9463<br>F: | Trade Debt | $6,447.69 |
| 22 | Amacai Information Corporation | dba Localeze<br>PO Box 9135<br>Uniondale, NY 11555<br>P: 312-924-3020<br>F: 312-924-3001 | Trade Debt | $5,550.00 |
| 23 | Clear Channel Broadcasting Inc | 200 E Basse Rd<br>San Antonio, TX 78209<br>P: 210-822-2828<br>F: 843-884-1218 | Trade Debt | $5,078.67 |
| 24 | Marketon Broadcast Solutions | PO Box 3375<br>Portland, OR 97208<br>P: 208-788-6800<br>F: 541-271-1401 | Trade Debt | $4,969.79 |
| 25 | Clear Channel Outdoor | 2305 Sparksman St<br>El Paso, TX 79903<br>P:<br>F: | Trade Debt | $4,960.00 |
| 26 | Promo Suite | 65 Broadway Ste 602<br>New York, NY 10006<br>P: 212-509-1200<br>F: | Trade Debt | $4,740.00 |
| 27 | New Odyssey Investment | 200 N Green River Rd.<br>Evansville, IN 47715<br>P: 212-351-7900<br>F: 212-351-7925 | Trade Debt | $4,400.00 |
| 28 | El Paso Water Utilites | Public Service Board<br>PO Box 511<br>El Paso, TX 79961-0001<br>P: 915-594-5500<br>F: 915-594-5660 | Trade Debt | $3,656.06 |
| 29 | National Association of Broadcasters | Chris Suever, Director 1<br>771 N St NW<br>Washington, DC 20036<br>P: 202-429-5300<br>F: 202-429-4199 | Trade Debt | $3,600.00 |

| | (1)<br>Name of Creditor | (2)<br>Name, telephone number and complete mailing address, including zip code of employee, agents, or department of creditor familiar with claim who may be contacted | (3)<br>Nature of claim (trade debt, bank loan, government contracts, etc.) | (4)<br>Amount of Claim (secured also state value of security) |
|---|---|---|---|---|
| 30 | KDBC Tower Rental | TTBG El Paso OPCO, LLC<br>801 N. Oregon St.<br>El Paso, TX 79902 | Trade Debt | $3,498.93 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REGENT COMMUNICATIONS, INC.[1] | Case No. 10-_____ (____) |
| Debtor. | Joint Administration Pending |

### DECLARATION CONCERNING DEBTORS' CONSOLIDATED LIST OF CREDITORS HOLDING 30 LARGEST UNSECURED CLAIMS

I, Anthony A. Vasconcellos,  Executive Vice President and Chief Financial Officer of Regent Communications, Inc., a Delaware corporation, declare under penalty of perjury that I have reviewed the Consolidated List of Creditors Holding 30 Largest Unsecured Claims submitted herewith, and that the list is true and correct to the best of my information and belief.

Dated: _3 - 1_____, 2010

_____
Anthony A. Vasconcellos

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REGENT COMMUNICATIONS, INC.,[1] | Case No. 10-_____ (____) |
| Debtor. | Joint Administration Pending |

## STATEMENT OF CORPORATE OWNERSHIP

The following entities directly or indirectly own 10% or more of any class of the above-captioned Debtor's equity interests:

| | |
|---|---|
| Entities affiliated with John J. Ahn | 9.66% |
| Entities affiliated with Bryant Riley | 9.58% |

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REGENT COMMUNICATIONS, INC.,[2] | Case No. 10-_____ (____) |
| Debtor. | Joint Administration Pending |

## DECLARATION REGARDING STATEMENT OF CORPORATE OWNERSHIP

I, Anthony A. Vasconcellos, Executive Vice President and Chief Financial Officer of

Regent Communications, Inc. a Delaware corporation, declare under penalty of perjury that I

have reviewed the Statement of Corporate Ownership and that the information is true and correct

to the best of my information and belief.

Dated: _____, 2010

_____
Anthony A. Vasconcellos

---

[2]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>REGENT COMMUNICATIONS, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 10-_____ (____)<br><br>Joint Administration Pending |

## LIST OF EQUITY SECURITY HOLDERS

In accordance with Rule 1007(a)(1) and 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the Debtor submits the List of Equity Security Holders attached hereto, representing the record holders as of March 1, 2010.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).

## List of Equity Security Holders

| Name | Address | Shares |
|------|---------|--------|
| American Enterprise Investment Services<br>Rebecca Strand | 2178 AMP Financial Center<br>Minneapolis, MN 55474 | 21,208 |
| Ameriprise<br>Mike Kohler | 751 Griswold St<br>Detroit, MI 48226 | 44,100 |
| Assent LLC<br>Paul Botta | 5 Marine Plaza<br>Ste 102<br>Hoboken, NJ 07030 | 60,561 |
| Baird Robert W & Co Inc<br>Dean Markofski | 777 E Wisconsin Ave<br>Milwaukee, WI 53202 | 375,691 |
| Bank of America National Association<br>Carla V Brooks | 411 N Akard 5th Fl<br>Dallas, TX 75201 | 688 |
| BMO Nesbitt Burns Inc<br>Louise Torangeau | 1 First Canadian Place 13th Fl<br>PO Box 150<br>Toronto<br>ON M5X 1H3<br>CANADA | 2,195 |
| BNP Paribas Securities Corp<br>Creighton Douglass | 555 Croton Rd<br>King of Prussia, PA 19406 | 2 |
| BNY Mellon<br>Michael Kania | 525 William Penn Place<br>Pittsburgh, PA 15259 | 25,648 |
| Brown Brothers Harriman & Co<br>Dorota Malkiewicz | 525 Washington Blvd<br>New Port Towers<br>Jersey City, NJ 07302 | 102,691 |
| Brown Brothers Harriman & Co ETF<br>Sheldon Broutman | 140 Broadway<br>New York, NY 10005 | 275,690 |
| Canaccord Capital Corporation<br>Aaron Caughlan | 609 2200 Granville St<br>Vancouver, BC<br>V7Y 1H2<br>CANADA | 39,505 |
| CDS Clearing and Depository Services<br>Loretta Verelli | 600 de Maisonneuve Blvd W<br>Ste 210<br>Montreal, QC H3A 3J2<br>CANADA | 4,000 |
| Charles Schwab & Co Inc<br>Debbie Jung | 2423 E Lincoln Dr<br>PHX PEAK 02 K130<br>Phoenix, AZ 85016 | 1,355,877 |
| Citadel DG<br>Marcia Banks | 101 S Dearborn St<br>Chicago, IL 60603 | 10,143 |
| Citibank NA<br>Sandra Hernandez | 3800 Citibank Center B3 12<br>Tampa, FL 33610 | 38,333 |

| Name | Address | Shares |
|---|---|---|
| Citigroup Global Markets Inc<br>Pat Haller | 111 Wall St, 6th Fl<br>New York, NY 10005 | 119,703 |
| Clearview Correspondent Services LLC<br>Linda Miller | 8006 Discovery Dr<br>Richmond, VA 23229 | 25,000 |
| Crowell Weedon & Co<br>George Lewis | 624 S Grand Ave<br>25th Fl<br>Los Angeles, CA  90017 | 300 |
| Custodial Trust Co<br>Dawn Eike | 101 Carnegie Center<br>Princeton, NJ  08540 | 135,912 |
| Desjardins Securities Inc<br>Karla Diaz | 2 Complexe Desjardins Tour Est<br>Nirveau 62 E1 22QC<br>Montreal, QC<br>H5B 1J2<br>CANADA | 8,000 |
| Deutsche Bank Securities Inc<br>Jamaal Grier | 5022 Gate Pkwy<br>Bldg 100<br>Jacksonville, FL 32256 | 101,988 |
| Edward D Jones & Co<br>Kennique Meals | 700 Maryville Center Dr<br>St Louis, MO  63141 | 44,845 |
| ETrade Clearing LLC<br>Matt Freifeld | 1981 Marcus Ave<br>Ste 100<br>Lake Success, NY 11042 | 351,809 |
| First Southwest Co<br>Kevin Miller | 325 N St Paul<br>Ste 800<br>Dallas,  TX  75201 | 30 |
| Folio FN Investments Inc<br>Ashley Theobald | 8180 Greensboro Dr<br>8th Fl<br>McLean, VA 22102 | 15,727 |
| Genesis Securities LLC<br>Shawn Arani | 50 Broad St<br>2nd Fl<br>New York, NY 10004 | 4,993 |
| Goldman Sachs & Co<br>Gloria Lio | 30 Hudson St<br>Proxy Dept<br>Jersey City, NJ  07302 | 13,050 |
| Goldman Sachs Execution & Clearing<br>Anthony Bruno | 30 Hudson St<br>4th Fl<br>Jersey City, NJ 07302-4699 | 3,798,815 |
| Goldman Sachs International<br>Vanessa Camardo | 30 Hudson St<br>Proxy Dept<br>Jersey City, NJ 07302 | 25,092 |
| Interactive Broker Retail Equity Clearing<br>Ken Hayden | 2 Pickwick Plz<br>2nd Fl<br>Greenwich, CT 06830 | 90,298 |

| Name | Address | Shares |
|---|---|---|
| J P Morgan Clearing Corp<br>Vincent Marzella | One Metrotech Center North<br>4th Fl<br>Brooklyn, NY  11201-3862 | 6,591 |
| Janney Montgomery Scott LLC<br>Michael Tse | 1801 Market St<br>9th Fl<br>Philadelphia, PA  19103-1675 | 1,420 |
| Jefferies & Co Inc<br>Joseph Porcello | Harborside Financial Center<br>705 Plaza 3<br>Jersey City, NJ  07311 | 51,307 |
| JJB Hilliard WL Lyons Inc<br>Kevin Medico | c/o ADP Proxy Services<br>51 Mercedes Way<br>Edgewood, NY<br>11717<br>USA | 16,200 |
| JPMorgan Chase Bank NA<br>Armando Morales | 14201 Dallas Pkwy<br>Dallas, TX 75254 | 46,943 |
| JPMorgan Chase Bank/IA<br>Sanjay Ghuliani | Paradigm B Wing Fl 6<br>Mindspace Malad W<br>Mumbai  400 064<br>INDIA | 2,601 |
| Legent Clearing c/o Mediant<br>Communications<br>Vinny Missiano | 109 North 5th St<br>Saddle Brook, NJ 07663 | 6,144 |
| Lehman Brothers Inc<br>Jim Gardiner | 70 Hudson St<br>10th Fl<br>Jersey City, NJ 07302 | 561 |
| LPL Financial Corporation<br>Martha Strahan | 2810 Coliseum Centre Dr<br>5th Fl<br>Charlotte, NC 28217 | 12,696 |
| Manufacturers and Traders Trust Co<br>Stephen Schmidt | 1 M & T Plaza<br>8th Fl<br>Buffalo, NY  14203 | 950 |
| Merrill Lynch Pierce Fenner & Smith<br>Henry Moralez | 101 Hudson St<br>8th Fl<br>Jersey City, NJ 07302 | 71,373 |
| Merrill Lynch, Pierce, Fenner & Smith<br>Linda Morgan | 101 Hudson St<br>9th Fl<br>Jersey City, NJ 07302 | 13,612 |
| Mesirow Financial Inc<br>Steve Raschke | 350 N Clark St<br>Chicago, IL  60610 | 847,900 |
| Morgan Keegan & Co Inc<br>Carol Antley | 50 North Front St<br>Memphis, TN  38103 | 17,845 |

| Name | Address | Shares |
|---|---|---|
| Morgan Stanley & Co Inc<br>Michelle Ford | 1000 Lancaster St<br>3rd Fl<br>Baltimore, MD 21202 | 98,290 |
| Morgan Stanley & Co Inc<br>Suzanne Mundle | 230 Harborside Financial Center<br>Plaza 2 7th Fl<br>Jersey City, NJ 07311 | 35,101 |
| National Financial Services<br>Lou Trezza | 200 Liberty St<br>New York, NY 10281 | 3,981,395 |
| NBCN Inc<br>Louise Normandin | 1010 Rue de la Guachetiere St West<br>Ste 1410<br>Montreal, QC H3B 5J2<br>CANADA | 2,800 |
| Northern Trust Co<br>Stella Castaneda | 801 S Canal St<br>Bldg C1N<br>Chicago, IL 60607 | 1,305,474 |
| NTC/UNJSPF<br>Joe Swanson | 801 S Canal<br>Chicago, IL 60607 | 49,800 |
| Oppenheimer & Co Inc<br>Oscar Mazario | 125 Broad St<br>15th Fl<br>New York, NY 10004 | 1,085 |
| Optionsxpress Inc<br>Scott Johnson | 311 W Monroe St<br>Chicago, IL 60606 | 3,660 |
| Penson Financial Services Inc<br>Robert McPhearson | 330 Bay St Ste 711<br>Toronto, ON<br>M5H 2S8<br>CANADA | 4,800 |
| Penson Financial Services Inc<br>Heather Beasley | 1700 Pacific Ave<br>Ste 1400<br>Dallas, TX 75201 | 179,915 |
| Perelman Carley & Associates Inc<br>Steve Perelman Prince | Twin Towers<br>3000 Farnam St<br>Omaha, NE 68131 | 200 |
| Pershing LLC Securities Corporation<br>Al Hernandez | 1 Pershing Plaza<br>Jersey City, NJ 07399 | 5,976,180 |
| PNC Bank NA<br>Eileen Blake | 8800 Tinicum Blvd<br>MS F6 F266 02 2<br>Philadelphia, PA 19153 | 4,219,846 |
| Raymond James & Associates Inc<br>Valerie Quick | 880 Carillion Pkwy<br>St Petersburg, FL 33733 | 168,374 |
| RBC Capital Markets Corporation<br>Tara Olmanson | 510 Marquette Ave South<br>10th Fl<br>Minneapolis, MN 55402 | 25,327 |

| Name | Address | Shares |
|---|---|---|
| RBC Dominion Securities Inc<br>Desiree Dmello | 277 Front St W<br>4th Fl<br>Toronto, ON  M5V 2X4<br>CANADA | 40,040 |
| Ridge Clearing & Outsourcing Solutions<br>Matt Freifeld | 1981 Marcus Ave<br>Ste 100<br>Lake Success, NY  11042 | 103,902 |
| Scotia Capital Inc<br>Normita Ramirez | PO Box 4085<br>Station A<br>Toronto, ON M5W 2X6<br>CANADA | 21,400 |
| Scottrade Inc<br>Terri Losche | 12855 Flushing Meadows Dr<br>St Louis, MO  63131 | 524,672 |
| SG AMERICA<br>Pete Scavone | 1221 Ave of the Americas<br>New York, NY  10020 | 1 |
| Southwest Securities Inc<br>Christina Finzen | 1201 Elm St<br>Ste 3700<br>Dallas, TX  75270 | 2,000 |
| SSB IBT BGI<br>Tom Broderick | 1776 Heritage Dr<br>N Quincy, MA  02171 | 372,869 |
| State Street Bank and Trust Co<br>Amanda Banta | Corp Actions JAB5E<br>1776 Heritage Dr<br>North Quincy, MA  02171-2101 | 2,087,900 |
| Stephens Inc<br>Linda Thompson | 111 Center St, 4th Fl<br>Little Rock, AR  72201-4402 | 242 |
| Stifel Nicolaus & Co Inc<br>Chris Wiegand | 501 N Broadway, 7th Fl<br>St Louis, MO  63102 | 7,763 |
| TD Ameritrade Clearing Inc<br>Gary Swain | 1005 Ameritrade Pl<br>Bellevue, NE  68005 | 1,700,775 |
| TD Waterhouse Canada Inc<br>Beverly Adams | 60 North Windplace<br>Scarborough, ON  M1S 3A7<br>CANADA | 28,349 |
| Texas Treasury Safekeeping Trust<br>Janie Dominguez | 208 E 10th St<br>Rm 410<br>Austin, TX  78710 | 14 |
| The Bank of New York Mellon<br>Susan Karafa | BNY Asset Servicing<br>525 William Penn Pl Ste 0400<br>Pittsburgh, PA  15259 | 163,620 |
| TradeStation Group Inc<br>Herbert Walton | 8050 SW 10th St<br>Ste 4000<br>Plantation, FL  33324 | 1,256,685 |
| UBS Financial Services LLC<br>Jane Flood | 1200 Harbor Blvd<br>Weehawken, NJ  07086 | 1,169,168 |

| Name | Address | Shares |
|---|---|---|
| UBS Securities LLC<br>John Malloy | 480 Washington Blvd<br>Jersey City, NJ 07310 | 415,412 |
| US Bancorp Investments Inc<br>Kathy Dabruzzi | 60 Livingston Ave<br>EP MN WN2H<br>St Paul, MN 55107-1419 | 50 |
| US Bank NA<br>Tim Randall | 1555 N Rivercenter Dr<br>Ste 302<br>Milwaukee, WI 53212 | 504,782 |
| USAA Investment Management Co<br>Joyce Wilson | HOA02W B1<br>9800 Fredericksburg Rd<br>San Antonio, TX 78288 | 15,478 |
| Vanguard Marketing Corporation<br>John Clemente | 1345 Ave of the Americas<br>New York, NY 10105-4300 | 28,848 |
| Wachovia Bank N.A.<br>Victoria Stewart | 1525 W WT Harris Blvd<br>Charlotte, NC 28262-8522 | 500 |
| Wachovia Securities<br>Finessa Rosson | One North Jefferson St<br>St Louis, MO 63103 | 307,395 |
| Wedbush Morgan Securities Inc<br>Hermon Alem | 1000 Wilshire Blvd<br>Los Angeles, CA 90017 | 240 |
| Wells Fargo Bank, National Association<br>Kevin St Louis | 733 Marquette Ave<br>MAC N9306 057 5th Fl<br>Minneapolis, MN 55402 | 52,900 |
| Wells Fargo Investments, LLC<br>Chris Thompson | 625 Marquette Ave, 13th Fl<br>Minneapolis, MN 55402-2308 | 54,790 |
| Wilson-Davis & Co, Inc<br>Bill Walker | 236 South Main St<br>Salt Lake City, UT 84101 | 11,908 |

| Name | Address | Shares |
|---|---|---|
| David D Acevedo | 2730 Boston St SE<br>GRAND RAPIDS, MI 49506-4718 | 100 |
| Joseph Adams | PO Box 351<br>LOCUST VALLEY, NY 11560-0351 | 170 |
| John Ahn | 16757 Bajio Road<br>ENCINO, CA 91436 | 3,750 |
| Sam Allegro & Alice Allegro & John Allegro Jt Ten | 3120 Willow Rd<br>SO CHICAGO HEIGHTS, IL 60411-5347 | 42 |
| Robert E Allen | 44 Reily Rd<br>CINCINNATI, OH 45215 | 14,278 |
| Stuart Allen | 618 Charles<br>DAVISON, MI 48423 | 814 |
| Williard L Allen & Edythe Allen Jt Ten | 1579 Lakeveiw Dr<br>BOUNTIFUL, UT 84010 | 140 |
| Charity Anderson | 510 Kennedy Ct<br>WYOMING, IL 61491 | 66 |
| Kevin R Anfield | 311 Snider Ln<br>CHATHAM, IL 62629-5022 | 56 |
| Paula Angstadt | 19935 Paso Robls Ave<br>REDDING, CA 96003 | 600 |
| Anna M Artale & Josephine Artale Jt Ten | 207 Berkshire Dr<br>FARMINGVILLE , NY 11738-2063 | 140 |
| Anna M Artale | 207 Berkshire Drive<br>FARMINGVILLE , NY 11738-2063 | 211 |
| Vito Artale & Josephine Artale Jt Ten | 207 Berkshire Dr<br>FARMINGVILLE , NY 11738-2063 | 140 |
| Debra A Arthurs | 210 Elysian Fields D<br>LAFAYETTE, LA 70508 | 717 |
| Robert J Ausfeld | 1726 Wendell Ave<br>SCHENECTADY, NY 12308 | 3,000 |
| Dawn Bahan | 5704 W Charleston Ct<br>PEORIA, IL 61607 | 11,251 |
| Christopher J Barber | 1100 Sacramento Street<br>Apt 408<br>SAN FRANCISCO, CA 94108 | 97 |
| Marvin J Barlow & Mary A Barlow Jt Ten | 11823 33rd Dr Se<br>EVERETT, WA 98208-6152 | 100 |
| Charley R Barnes | 5206 W 27th Street<br>GREELEY, CO 80634 | 2,125 |
| Michale Baron | Middle Road<br>SANDS POINT, NY 11050 | 281 |
| Frederick Barr Iii | 8664 Mcgovern<br>BYRON CENTER, MI 49315 | 188 |

| Name | Address | Shares |
|---|---|---|
| Chester Bates | 723 18th St Sw<br>PUYALLUP, WA 98371-6645 | 84 |
| Rea A Baxter | 3181 Holloway Lane<br>HENDERSON, KY 42420 | 2,740 |
| Mary Jo Beach | 8693 Maple Ln<br>LEE CENTER, NY 13363 | 3,159 |
| Morris Becher & Susan Becher Jt Ten | 4635 Baypark Way<br>BROOKLYN, NY 11230-3332 | 704 |
| Pamela Begnaud | 435 Mermentau Rd<br>YOUNGSVILLE, LA 70592 | 1,124 |
| Robert Belongie | 20253 Charlanne Drive<br>REDDING, CA 96002 | 96 |
| George D Belotti | 330 E Algrove St<br>COVINA, CA 91723 | 28 |
| Edward Benks | 3450 Lost Lake Place<br>Unit K 1<br>FORT COLLINS, CO 80528 | 768 |
| Moshe Benyamini | 27 Beacon Ln<br>MATAWAN, NJ 7747 | 218 |
| Kevin Bessler | 606 S Spencer<br>LEXINGTON IL 61753 | 447 |
| Ronald Bivens | 1235 Hales Branch Rd<br>MIDLAND OH 45148-9785 | 300 |
| Blue Chip Capital Fund Iii Limited Partnership | C/O Blue Chip Venture Co<br>250 East Fifth Street Suite 1100<br>CINCINNATI, OH 45202 | 363,636 |
| Blue Chip Capital Fund Iii Limited Partnership | 1100 Chiquita Center<br>250 East Fifth Street<br>Cincinnati, OH 45202<br>CONTACT JOHN WYANT | 200,000 |
| Blue Chip Capital Fund Ii Limited Partnership | Attn: John Wyant<br>1100 Chiquita Center<br>250 East Fifth Street<br>CINCINNATI, OH 45202 | 1,702,718 |
| Blue Chip Capital Fund Ii Limited Partnership | C/O Blue Chip Venture Co<br>250 East Fifth Street Suite 1100<br>CINCINNATI, OH 45202 | 679,523 |
| Thomas F Bobinski | 5880 W Spicey Hill Dr<br>HOMOSASSA FL<br>34448-1307 | 70 |
| Mary Therese Bohen | 2823 Sigsbee St<br>ERIE, PA 16508-1724 | 100 |
| Paul Boscarino | 7458 De Costa Drive<br>ROCKFORD, MI 49341 | 283 |

| Name | Address | Shares |
|------|---------|--------|
| Mark E Brefka | 20 Main St<br>Ste 2<br>ASHLAND, MA 01721-3115 | 121 |
| Gregory L Brockdorf | 10950 W Stanton Rd<br>TRUFANT, MI 49347 | 35 |
| Roger J Brod | 1907 So 8th<br>QUINCY , IL 62301-7207 | 14 |
| William R Brown & Charlean F Brown Jt Ten | 7305 Cooper Chapel Rd<br>LOUISVILLE, KY 40229-1729 | 3 |
| Russell A Buckingham | 10719 Juniper Pass<br>SAN ANTONIO, TX 78254-1753 | 87 |
| Eugene D Burbak | 173 Meadowbrook Ln<br>GARDEN CITY, NY 11530 | 49 |
| Diane Burden | 919 Euclid Ave<br>PEORIA HTS, IL 61616 | 0 |
| Maria Ella Caiola | 227 1st Ave<br>FRANKFORT, NY 13340 | 411 |
| Mark Callaghan | 9103 E 29th Pl<br>DENVER, CO 80238 | 696 |
| Jeffrey J Capasso | 685 Ventana Way<br>WINDSOR, CO 80550-2832 | 6,313 |
| Mary Jane Carman | 614 Emery Street<br>SALT LAKE CITY, UT 84104-2429 | 140 |
| Joseph M Carson & Adah R Carson Jt Ten | 698 Meadowlawn Dr Se<br>SALEM, OR 97301-5649 | 14 |
| Philip Catlett | PO Box 230851<br>GRAND RAPIDS, MI 49523 | 18,613 |
| Stan Chapman & Marjorie M Chapman Jt Ten | 1424 Plata Way<br>SANDY, UT 84093-2351 | 28 |
| Dianne Chase | 810 Academy St<br>WATERTOWN, NY 13601-3447 | 843 |
| Gary Chenoweth | 2827 Sharon Ave Sw<br>WYOMING, MI 49519 | 0 |
| Rich Chiaino | 6430 Bridlewood Dr S<br>EAST AMHERST, NY 14051 | 136 |
| Richard Chiaino | 6430 Bridlewood Dr S<br>E AHMERST, NY 14051 | 0 |
| Clayton Church | 7334 Ironwood Dr<br>SWARTZ CREEK, MI 48473-9450 | 4,103 |
| Calvin H Clark | 7740 Forrest Bend Dr<br>SALT LAKE CITY, UT 84121-5023 | 140 |
| Steven J Colbert & Karen S Colbert Jt Ten | 20 Bellaire Court<br>HILLSBOROUGH, CA 94010 | 49 |

| Name | Address | Shares |
|------|---------|--------|
| Regent Communications | Treasury<br>100 E Rivercenter Blvd<br>9th Floor<br>COVINGTON, KY 41011 | 7,774,161 |
| Robert Condos & Nancy Condos Jt Ten | 14900 Woodland Park Dr<br>FOREST RANCH, CA 95942-9745 | 100 |
| Susan Conolly Cust Joseph W Nath III Utma of Pa | 4026 Ellendale Rd<br>DREXEL HILL, PA 19026 | 10 |
| Annette Bialas Cook | 3328 Chalmers Dr<br>WILMINGTON, NC 28409-6908 | 35 |
| Janet Sue Smith-Cook | 247 York St<br>WALTON, KY 41094-8756 | 100 |
| Linda Cowart | 3066 South 3140 West<br>SALT LAKE CITY, UT 84119-1751 | 28 |
| William R Crago | 515 Stockton Dr<br>OWENSBORO, KY 42303-7017 | 90 |
| Ladonne Craig | 5999 Laurel Ridge Dr<br>NEWBURGH, IN 47630 | 0 |
| Kenneth P Crowley | 1234 Waterfront Dr<br>MT PLEASANT, SC 29464 | 49 |
| Gerard N Cudzil | 134 Beaver Brook Ct<br>HOLMDEL, NJ 07733-2541 | 49 |
| Eric Currivan | 7 Bruck Court<br>SPRING VALLEY, NY 10977-1123 | 70 |
| Keith Custer | 7488 Four Mile Road<br>BLANCHARD, MI 49310-9475 | 35 |
| Phidia K Cutrubus | 4300 Lakeview Dr<br>OGDEN, UT 84403-3263 | 1,127 |
| Paula Dagen | 55 Central Park W 9d<br>NEW YORK, NY 10023-6003 | 25 |
| French Damewood III | 202 E Schantz Ave<br>DAYTON, OH 45409-2223 | 3,106 |
| Erik L Davis | 119 E 4th St<br>BAXTER SPGS, KS 66713-1234 | 25 |
| Ida R Davis Cust Holly E Williams Missouri Transfers To Min Law | 1739 Baker Blvd<br>CARTHAGE, MO 64836-3004 | 25 |
| Ida R Davis Cust Katherine R Williams Missouri Transfers To Min Law | 1739 Baker Blvd<br>CARTHAGE, MO 64836-3004 | 25 |
| Michael Davis | PO Box 14844<br>CINCINNATI, OH 45250 | 593 |
| Tracianne Decarr | 63 Greenacres Drive<br>WHITESBORO, NY 13492 | 0 |

| Name | Address | Shares |
|---|---|---|
| Bernadette Deckard | 101 Wilbourn Blvd<br>Apt 907<br>LAFAYETTE, LA 70506-5173 | 2,278 |
| John Delorenzo | 10 Cotswold Ln<br>PRINCETON, NJ 8540 | 2,500 |
| David F Devine | 1410 Meridian St Se<br>ATLANTA, GA 30317-1726 | 10 |
| Raymond Dick | 27175 Barwick Dr<br>SALISBURY, MD 21801-1727 | 117 |
| George R Dickerson | 1416 Western Hills D<br>EVANSVILLE, IN 47720 | 1,535 |
| James A Doig & Barbara J Doig Jt Ten | 111 Green Ave<br>PORT JEFFERSON STATION, NY<br>11776-4411 | 56 |
| Michael S Done | 6153 E Campobello St<br>SCOTTSDALE, AZ 85254-5920 | 2,602 |
| Lawrence Downes | 7811 N Sherman Drive<br>INDIANAPOLIS, IN 46240 | 3,236 |
| Bradley Dubow | 608 Punto Reyes<br>EL PASO, TX 79912 | 3,030 |
| Robert Duncan | 8459 Oak Bough Cv<br>CORDOVA, TN 38018 | 969 |
| Edge Capital Lp | 10 E 40th St Ste 4210<br>NEW YORK, NY 10016 | 12,550 |
| Thomas O Edwards & Peggy Edwards Jt Ten | 12847 Se 86th Dr<br>WHITE SPRINGS, FL 32096-2317 | 28 |
| Matthew Elmore | 908 Nancy Ln<br>CINCINNATI, OH 45226-1230 | 85 |
| Sophie C Elphant | 178 Old Wilmot Road<br>SCARSDALE , NY 10583-6161 | 14 |
| David Engberg | 23732 Gaberdine Rd<br>SAINT CLOUD, MN 56301 | 4,034 |
| Jed L Ericksen | 3307 N 660 E<br>LEHI, UT 84043-2967 | 140 |
| John R Ervasti | Box 86<br>149 Towerhill Rd<br>SCARBOUGH, NY 10510 | 121 |
| John Falcon | 2202 S State<br>ABBEVILLE, LA 70510 | 1,356 |
| Marion L Fancher & Wilma J Fancher Jt Ten | Box 392<br>MILAN, IN 47031-0392 | 50 |
| Dallas M Faulkner | 2059 W Middlefield St<br>STOCKTON, CA 95204-4837 | 1 |

| Name | Address | Shares |
|---|---|---|
| Laura H Faulkner | 1219 Lancashire Dr<br>UNION, KY 41091 | 2,558 |
| Edward Fergus | 5 Haig Dr<br>DIX HILLS, NY 11746 | 49 |
| John H Ferguson & Mildred A Ferguson Jt Ten | 1776 Spruce St Whitehorse<br>TRENTON, NJ 08610-2233 | 28 |
| Herbert Finn | 65 Orchard St<br>MANHASSET, NY 11030-1928 | 97 |
| Deanna L Fischer | 754 Rochelle Circle<br>FORT COLLINS, CO 80526-3947 | 499 |
| Brian Fishkin & Randee Handler Jt Ten | 19-321 Nero Ave<br>HOLLIS, NY 11423-1153 | 140 |
| Zoe Burdine-Fly | 1134 Drury Lane<br>FLUSHING, MI 48433 | 3,308 |
| Patricia R Follett | 566 Purple Lilac Ln<br>SANDY, UT 84070-6200 | 70 |
| Jill Fontana | 667 Coronado St<br>REDDING, CA 96003 | 54 |
| Tim Foss | 8566 Pineview Lake D<br>LINDEN, MI 48451 | 315 |
| Lois R Frankel | 5100 San Felipe St Unit 323 East<br>HOUSTON, TX 77056-3620 | 140 |
| Joh E Frary | 32 Clovebrook Rd<br>VALHALLA, NY 10595 | 49 |
| Kelly Frost | 3979 Polaris Way<br>REDDING, CA 96002 | 76 |
| Linda Fry | 812 Cherokee Ln<br>PONTIAC, IL 61764 | 1,720 |
| James V Gallagher | 14 Britany Pl<br>BASKING RIDGE, NJ 7920 | 194 |
| William K Gary | 12012 Cantle Rd<br>OKLAHOMA CITY, OK 73120-8028 | 49 |
| Lisa Geraci | 11548 Vista Del Rio<br>REDDING, CA 96003 | 1,000 |
| Maria D Gilbert | C/O Riggs Natl Bank 800 17th St Nw<br>WASHINGTON, DC 20006 | 28 |
| Betty Gillen | 6650 Hearne Road<br>No 236<br>CINCINNATI, OH 45248 | 0 |
| Dorothy Glywasky | 3344 Gurrero Drive<br>MELBOURNE, FL 32940-5934 | 42 |
| Scott James Graham | 5 Settlers Trail<br>DARIEN, CT 06820-5531 | 387 |

| Name | Address | Shares |
|------|---------|--------|
| Patrick J Grattan | 3860 Braganza Ave<br>COCONUT GROVE, FL 33133-6307 | 121 |
| Jr Greeley | 600 Catherine<br>WASHINGTON, IL 61571 | 14,578 |
| Martin Greene | 570 Beale St.  Apt 207<br>SAN FRANCISCO, CA 94105-2022 | 100 |
| Joe Greenwood | 1221 3rd St<br>HENRY, IL 61537 | 40 |
| Martin Griffin | 1691 Oak Vista Ave<br>CHICO, CA 95926 | 712 |
| Mike Grimsley | 105 Appomatox Parkway<br>CARENCRO, LA 70520 | 6,860 |
| Robert Alfred Groff | 9818 Marina Blvd. Apt. 1201<br>BOCA RATON, FL 33428-6609 | 14 |
| Kent T Grover | 4876 Grand View Peak Dr<br>RIVERTON, UT 84096 | 140 |
| Andrew Grundy | 42 Bowman Dr<br>GREENWICH, CT 06831-3237 | 28 |
| Calvert Hall | 1724 Tanglewood Dr<br>FORT COLLINS, CO 80525 | 0 |
| David Halperin | 299 Kingspoint #124<br>EL PASO, TX 79912 | 605 |
| Bruce D Hammer | 16446 Marbro Dr<br>ENCINO, CA 91436-3619 | 49 |
| Ezra Harel | C/O M. A. Nissim<br>1 Rockefeller Plaza, Suite 2412<br>NEW YORK, NY 10022 | 7,049 |
| Teresa Sue Harmon | Box 1800<br>SANTA YNEZ, CA 93460-1800 | 49 |
| Amy B Harris | PO Box 727<br>WINDSOR, CO 80550-0727 | 1,305 |
| John Harvey | 7366 Green Valley<br>GRAND BLANC, MI 48439 | 5,832 |
| Liana Hathaway | 1714 S 2300 E<br>SALT LAKE CITY, UT 84108-3031 | 100 |
| Charles J Hazlett | 1717 N Bayshore Dr<br>1854<br>MIAMI, FL 33132 | 97 |
| Thomas W Hehman | 301 E 78th St Apt 17c<br>NEW YORK, NY 10021 | 49 |
| Linda Hippenstiel | 8720 Andromeda Rd<br>SAN DIEGO, CA 92126 | 800 |
| John W Hirsch | 31 Comely Ln<br>LATHAM NY, 12110-5225 | 906 |

| Name | Address | Shares |
|---|---|---|
| Benjamin Hoffman | 1480 Bull Skin Run Ct<br>BEAVERCREEK, OH 45434 | 0 |
| Fred W Hoffman & Jeanne M Hoffman Jt Ten | 28 N Moison Rd<br>BLAUVELT, NY 10913-1415 | 140 |
| Jeanne M Hoffman | 28 N Moison Rd<br>BLAUVELT, NY 10913-1415 | 28 |
| William Hoffman | 15 Virginia Ave<br>ALBANY, NY 12205 | 0 |
| Denise Horak | 950 Palo Vista Ct<br>REDDING, CA 96003 | 20 |
| Nathan Howell | 502 Lakeview Drive<br>WINDSOR, CO 80550 | 145 |
| Thomas Hoyt | 2174 Villagewest Dr S<br>LAPEER, MI 48446 | 3,050 |
| John J Hudson | 4031 Meadow Grove<br>MASON, OH 45040 | 770 |
| Deborah Huschle | 16218 St Hwy 22<br>EDEN VALLEY, MN 55329 | 695 |
| Michael Hutchens | 612 Sheridan Rd<br>EVANSVILLE, IN 47710-3456 | 0 |
| Crystal Jacobs | 5525 Grand River Ave<br>GRAND RAPIDS, MI 49525 | 836 |
| Terry S Jacobs | 6561 Madeira Hills<br>CINCINNATI, OH 45243 | 362,122 |
| Terry S Jacobs | 8040 Hosbrook Rd<br>Ste 400<br>CINCINNATI, OH 45236 | 37,909 |
| Thomas Jacobsen | 5486 River Street<br>LOWVILLE, NY 13367 | 3,091 |
| Rene Jinorio | C/O Perricone<br>287 Juli Anne Ter<br>SECAUCUS, NJ 07094-4012 | 98 |
| Carolyn Johnsen | 107 15th St Apt - B1<br>GARDEN CITY, NY 11530 | 159 |
| Robert Johnson & Phyllis Johnson Jt Ten | 15 Brighton Ave<br>SPRING LAKE, NJ 7762 | 97 |
| Michael Jones | 389 Cedarville Rd<br>ILION, NY 13357-3934 | 304 |
| Mike Jones | 2452 Walker Lane<br>SALT LAKE CTY, UT 84117 | 56 |
| Randy L Jones | 2079 Terra Vista Way<br>SANDY, UT 84093 | 56 |
| Rick B Jones | 1094 E Skyler Dr<br>DRAPER, UT 84020 | 56 |

| Name | Address | Shares |
|------|---------|--------|
| Rosalie L Jones | 4678 South San Lucas Court<br>SALT LAKE CITY, UT 84117 | 84 |
| Janae C Jontry | 7 Tatiana Ct<br>BLOOMINGTON, IL 61704 | 2,716 |
| Thomas Katovitz | 11 Fox Ln<br>LATTINGTOWN, NY 11560 | 49 |
| Karen A Kelly | 1709 Fairfield Dr<br>NORMAL, IL 61761 | 4,136 |
| Robert Kelly | 11620 Kodiak Dr #30<br>CINCINNATI, OH 45240 | 261 |
| Robert Kelly | 11620 Kodiak Dr #30<br>CINCINNATI, OH 45240 | 0 |
| Virginia D Kelly | 106 Claymore Dr<br>LAFAYETTE, LA 70503 | 280 |
| Mary Valerie Kempinski & Pierina Kempinski Jt Ten | Box 236<br>ROCKY POINT, NY 11778-0236 | 14 |
| Scott C Kersh | 17 Newcastle Lane<br>LAGUNA NIGUEL, CA 92677-9328 | 242 |
| John Kimball | 7374 Lost Canyon Cir<br>SALT LAKE CITY, UT 84121-4603 | 100 |
| Gary King | 2409 Sunrise Key Blvd<br>FT LAUDERDALE, FL 33304 | 49 |
| Jacob Kiser | PO Box 753<br>INDEPENDENCE, KY 41051-0753 | 529 |
| Kristen Kite | 1557 Tonopah Drive<br>CINCINNATI, OH 45255 | 261 |
| Gregory Koufos | P.O Box 353<br>EAST ROCKAWAY, NY 11518-1915 | 169 |
| Michael J Krull | 5 Hastings Rd<br>MONSEY, NY 10952-1312 | 97 |
| Holly Kuntz | 2112 Barnwood Ct<br>FORT COLLINS, CO 80525 | 95 |
| Louis Labonte | 86 Birch St<br>MANCHESTER, CT 06040-5309 | 19 |
| Steve Lahr | 30228 220th St<br>PAYNESVILLE, MN 56362 | 0 |
| Andrea Lambrecht | 9270 Duelm Rd<br>SAUK RAPIDS, MN 56379 | 311 |
| Lawrence Landis | 2974 Mountain View Dr<br>LAGUNA BEACH, CA 92651-2021 | 500 |
| David M Landry | 102 Windchimes<br>YOUNGSVILLE, LA 70592 | 1,654 |
| Lynn Larson | 613 W Sartell St.<br>SARTELL, MN 56377 | 7,089 |

| Name | Address | Shares |
|------|---------|--------|
| Jonathan S Laughlin | 15 Foley Ave<br>BLOOMINGTON, IL 61701 | 377 |
| Cecile F Laurie | 2756 Chaucer St<br>LAS VEGAS, NV 89135-2096 | 42 |
| Earlene A Leavitt | 3065 Canyon View Cir<br>SALT LAKE CITY, UT 84109-2001 | 140 |
| Brent G Lee | 2834 Rutherford Dr<br>BLOOMINGTON, IL 61704 | 410 |
| Charles M Leisenring | 2838 Autumn Harvest<br>FORT COLLINS, CO 80528 | 8,125 |
| Jeanine Leone Tr Ua 4/8/97 Jeanine Leone Trust | 2387 Dayspring Ln<br>SALT LAKE CITY, UT 84124-1887 | 6 |
| Jeffrey Levack | 912 Vermont View Dr<br>WATERVLIET, NY 12189-1048 | 174 |
| Andrew L Lewis Iv | 356 Exeter Rd<br>HAVERFORD, PA 19041 | 8,750 |
| Lewis Ligammari | 619 23rd St<br>NIAGARA FALLS, NY 14301-2503 | 42 |
| Tracey L Lunenburg | 5 Brighton Way<br>FARMINGTON, CT 06032-4409 | 484 |
| Michael Maciejewski | 2765 Maguire<br>GRAND RAPIDS, MI 49525 | 838 |
| Richard A Malousek & Cheryl K Malousek Jt Ten | 1276 County Road #21<br>WAHOO, NE 68006 | 70 |
| Kelly R Manfredi | 1282 Buglers Sound Cir<br>BATAVIA, OH 45103-9232 | 682 |
| Caroline Mangiatordi Cust Nicholas F Mangiatordi Ugma Ny | 5 Wilputte Pl<br>NEW ROCHELLE, NY 10804-1426 | 14 |
| William A Marshall | 437 N 500 W<br>SALT LAKE CITY, UT 84116 | 1,409 |
| Catherine W Martin | 3410 Elm Dr<br>TEMPLE, TX 76502-2308 | 65 |
| Jason Martin | 4638 Mayo Ct<br>REDDING, CA 96001-6021 | 203 |
| David Mathews | 5027 Rellum Ave<br>CINCINNATI, OH 45238 | 290 |
| Aaron Mceachern | G3130 Augusta<br>FLINT, MI 48532 | 0 |
| Ann C Mcgarry | 4 Adam Pl<br>HAZLET, NJ 7730 | 14 |
| Jerry Mcgee | 333 Weldon St<br>REDDING, CA 96001 | 1,425 |
| Michael D Mckay | 3905 4th Ave Ne Unit 402<br>SEATTLE, WA 98105-6829 | 19 |

| Name | Address | Shares |
|---|---|---|
| Sean Mcmaster | 10 Gloucester St<br>CLIFTON PARK, NY 12065-1632 | 576 |
| Miami Valley Venture Fund Limited Partnership | 1100 Chiquita Center<br>250 E 5th Street<br>CINCINNATI, OH 45202 | 300,479 |
| Michael W Miller | 24 East Dr<br>LIVINGSTON, NJ 7039 | 484 |
| Tiffany D Miller | 3314 Kingsburg Court<br>ERLANGER, KY 41018 | 645 |
| Bruce L Mitchell & George L Mitchell Jt Ten | 4 Clayton Rd.<br>HEWITT, NJ 07421-1817 | 28 |
| Robert Alan Moody | 1345 Sydney Terrace<br>MOUNT JULIET, TN 37122 | 857 |
| Timothy M Mooney | 7184 Harbour Town Dr<br>WEST CHESTER, OH 45069 | 7,500 |
| Tim Moore | 25 Roohr Ct<br>CHICO, CA 95928-9446 | 42 |
| Yvonne Moore | 1 E Schiller 10 C<br>CHICAGO, IL 60610-2166 | 14 |
| Robert C Morgan & Elizabeth M Morgan Jt Ten | 4202 W 5855 So<br>SALT LAKE CITY, UT 84118-4504 | 140 |
| Johnnie Morris | 130 Mimosa Place<br>Apt H<br>LAFAYETTE, LA 70506 | 76 |
| Quin Morrison | 709 Elm St<br>WINDSOR, CO 80550 | 329 |
| Michael J Mrozek | 106 Canal Court<br>NEW RICHMOND, OH 45157 | 776 |
| Diana L Mullen | 9336 Queen Charlotte Dr<br>LAS VEGAS, NV 89145-8708 | 49 |
| Jack L Munroe & Joan J Munroe Jt Ten | 3141 Apple Blossom<br>INDIAN RIVER, MI 49749-9722 | 14 |
| Bonita Murr Exec Feo Fred L Murr | 62 Harbor View Ln<br>BENTON, KY 42025-8296 | 14,045 |
| Kevin Mussman | 381 Buffalo Dr<br>Unit E<br>WINDSOR, CO 80550-6022 | 1,318 |
| Jeffrey R Nagel | 726 A 55th St Sw<br>EVERETT, WA 98203 | 25 |
| Caleb P Nelson | 2 Falcon Chase<br>RENSSLEAER, NY 12144 | 1,140 |
| Ruth A Nichols | 3176 County Rd. 1200n<br>GRIDLEY, IL 61744 | 2,872 |

| Name | Address | Shares |
|------|---------|--------|
| Patrick G Nielsen | 2346 Croft St<br>IDAHO FALLS, ID 83401-4421 | 42 |
| Nominee Account <Crs Class> | C/O Computershare Investor Services<br>2 N. LaSalle<br>CHICAGO, IL 60602 | 1,507,875 |
| Kelly A Nurre | 9189 Knights Ridge Lane<br>MASON, OH 45040 | 37 |
| Terrance S Odwyer | 15 Carwall Ave<br>MOUNT VERNON, NY 10552-1211 | 49 |
| Carol B Oleary | One Forever Dr<br>HOLLIDAYSBURG, PA 16648 | 15,000 |
| Tedd W Olkowski | 2207 Southern Hills Dr<br>LEAGUE CITY, TX 77573-5858 | 40 |
| Frank Orlando & Madeline Orlando Jt Ten | 305 W Westfield Ave<br>ROSELLE PARK, NJ 7204 | 70 |
| Lawrence M Ortis | 325 Matthew Drive<br>CLINTON, NY 13323 | 811 |
| David Pack | 843 Colusa Ave<br>OROVILLE, CA 95965-4036 | 4 |
| Joe Palmer | 11105 Woodbridge<br>GRAND BLANC, MI 48439 | 848 |
| Keith R Palmgren | 2011 Claremont Commo<br>NORMAL, IL 61761 | 1,210 |
| Michael J Papa | 80 Woodcut Ln<br>MANHASSET, NY 11030-2529 | 49 |
| Don Parker | 579 Spruce Glen<br>MURRAY, UT 84107-4006 | 140 |
| Martin Paschkes & Louise Paschkes Jt Ten | 91 Cardinal Lane<br>HAUPPAUGE, NY 11788 | 56 |
| Eileen D Paskal | 20 Mcgee Ave<br>WAMBERAL, Australia 2260 | 14 |
| Richard Peabody | 102 Avondale Drive<br>EAST PEORIA, IL 61611 | 289 |
| Joel Pecore & Susie Pecore Jt Ten | Box 4526<br>N FT MYERS, FL 33918-4526 | 25 |
| Marian R Pendley | 10209 Runnymede Ave<br>BATON ROUGE, LA 70815 | 56 |
| Julie K Penn | 712 Mc Gregor Ave<br>BLOOMINGTON, IL 61701 | 0 |
| Timothy Perry | 245 Oxford Rd Apt #33b<br>NEW HARTFORD, NY 13413 | 811 |
| Leo A Pfadt & Jacqueline R Pfadt Jt Ten | 11962 Rte 19 N<br>WATERFORD, PA 16441-9107 | 140 |

| Name | Address | Shares |
|---|---|---|
| William M Pitcher | 6 Breckenridge<br>BLOOMINGTON, IL 61701 | 3,375 |
| Gary Popejoy | Box 154<br>MILLVILLE, CA 96062 | 28 |
| Johnny Graig Poplin | 97 Bridlewood Pl<br>CONCORD, NC 28025 | 194 |
| Roger Pride | 211 Case Ln<br>LAFAYETTE, LA 70506-5139 | 1,562 |
| Eric A Pschigoda | 24 Blackburn Court<br>NEW HARTFORD, NY 13413 | 3,322 |
| Kelly Quinn | 4381 Newark Circle<br>GRAND BLANC, MI 48439 | 1,560 |
| Mark J Ranucci | 611 Grassmere Ave<br>ASBURY PARK, NJ 7712 | 42 |
| Donna Redel | 180 E 79th St<br>NEW YORK, NY 10021 | 49 |
| Timothy R Redpath | Box 1695<br>SAUSALITO, CA 94966-1695 | 73 |
| Chris Reeb | 27 Flora Rd<br>BUFFALO, NY 14225 | 541 |
| David Remund | 710 Cassidy Ct<br>YUBA CITY, CA 95991 | 23,116 |
| David J Remund & Donann H Remund Jt Ten | 710 Cassidy Ct<br>YUBA CITY, CA 95991-1219 | 598 |
| Heather Ricco | 7680 Shadow Creek Drive #925<br>HAMILTON, OH 45011 | 0 |
| Georgina Riddle | 728 Tepic<br>EL PASO, TX 79912 | 908 |
| Austin H Rinaldi & Virginia Rinaldi Jt Ten | 1618 Dorsett Dock Rd<br>POINT PLEASANT, NJ 08742-4211 | 70 |
| Michael Ring | 12485 Cty Rt 66<br>ADAMS CENTER, NY 13606 | 150 |
| Randolph C Roark Cust Randolph J Roark Ugma Tn | Apt 422-J<br>5600 Lake Resort Terrace<br>CHATTANOOGA, TN 37415 | 14 |
| Vinita G Robinson | 3890 Rust Hill Pl<br>FAIRFAX, VA 22030-3916 | 140 |
| Heather Rock | 1336 Main Street<br>Suite #3<br>CINCINNATI, OH 45202 | 0 |
| Jason Roering | 314 Hetherington Cir<br>YUBA CITY, CA 95993-4638 | 29 |
| George Rudberg & Rose Marie Rudberg Jt Ten | 609 Lido Dr<br>BOULDER CITY, NV 89005-1116 | 100 |

| Name | Address | Shares |
|---|---|---|
| Robert G Rullman | 12310 Nw Maple Hill Ln<br>PORTLAND, OR 97229-4728 | 4,723 |
| Susan J Saunders | 22 Fedor Cir<br>BLOOMINGTON, IL 61704-5129 | 1 |
| Miles Schallert | 7592 Vardon Way<br>FORT COLLINS, CO 80528 | 564 |
| Ginger A Scherbarth | 5392 Conifer Dr<br>MASON, OH 45040 | 4,802 |
| Heidi Schirmers | 408 32nd Ave N<br>SAINT CLOUD, MN 56303 | 116 |
| Ryan J Schisler | 3247 Drew Drive<br>HAMILTON, OH 45011 | 54 |
| David P Schmidt | 630 West Rio San Pedro<br>GREEN VALLEY, AZ 85614-3900 | 321 |
| David P Schmidt & Christine L Schmidt Jt Ten | 630 W Rio San Pedro<br>GREEN VALLEY, AZ 85614 | 100 |
| Mark Schoenfelder | PO Box 462<br>SAINT ALBANS, MO 63073-0462 | 70 |
| Ronald Schott | 22483 Kildare Drive<br>CARLOCK, IL 61725 | 0 |
| John Schreiber | 1550 Greenhaven Lane<br>CHICO, CA 95926 | 343 |
| John Schroeder | 1668 Wildwood Rd<br>SAINT CLOUD, MN 56303 | 89 |
| Scott Schwardron | 8 Mulberry Lane<br>COLTS NECK, NJ 7722 | 14 |
| Jerald Scott | 112 Country Club Dr<br>PEKIN, IL 61554 | 1,027 |
| Douglas L Shearer | 675 Riviera Dr<br>LOS ALTOS, CA 94024-3124 | 97 |
| Robert R Short Tr U/A Dtd 00/00/00 Robert R Short Family Trust | 1270 E 10600 South<br>SANDY, UT 84094-6101 | 14 |
| Patricia Q Siegel & Irving C Siegel Jt Ten | 811 Cloyd Dr<br>Apt 418<br>MAGNOLIA, TX 77355-4659 | 200 |
| Jeffrey Silver | 255 Lakefront Blvd<br>BUFFALO, NY 14202 | 1,563 |
| Monica J Simonsen | 508 Rd 4600<br>HARDY, NE 68943 | 25 |
| Allison Simpson | 3037 Edge Mar Dr<br>EDGEWOOD, KY 41017 | 529 |
| Lisa A Smith | 63 Thompson Ave<br>Apt 2<br>FT MITCHELL, KY 41017-2761 | 957 |

| Name | Address | Shares |
|---|---|---|
| Wilfred Paul Sonnier | 1030 Napoleon Ave<br>P O Box 928<br>SUNSET, LA 70584-0928 | 836 |
| Thomas C Sorensen | 3287 Cummings Rd<br>SALT LAKE CITY, UT 84109-4172 | 112 |
| Rebecca L Sponheiner | 2445 West 22nd St<br>LOVELAND, CO 80538 | 28 |
| William Stachowiak | 80 Fredo St<br>BUFFALO, NY 14206 | 900 |
| William L Stakelin | 1870 Madison Rd<br>CINCINNATI, OH 45206 | 242,380 |
| Ryan Stewart | 12934 Bilmar<br>GRAND BLANC, MI 48439 | 442 |
| Shawn Stover | 10545 Cedar Rd<br>CLARENCE CENTER, NY 14032 | 1,040 |
| Jerry M Stuber | 37 Bluff Dr<br>SAVANNAH, GA 31406-7548 | 49 |
| Katherine J Lucas Stump | 8526 Morningcalm Dr<br>CINCINNATI, OH 45255 | 6,747 |
| Chester C Sudbrack Jr | 5560 Windridge Dr<br>CINCINNATI, OH 45243-2985 | 325 |
| Denise Sullivan | 5115 Ravensworth Rd<br>ANNANDALE, VA 22003-5557 | 42 |
| Joni Superville | 5146 Sterling<br>EL PASO, TX 79932 | 353 |
| Ray Sutley | 206 Crawford St<br>LAFAYETTE, LA 70506 | 1,729 |
| William P Sutter | 333 Richmond<br>KENILWORTH, IL 60043 | 18,750 |
| Robert Swinehart | 1109 North Edgehill<br>PEORIA, IL 61604 | 865 |
| Thomas H Decker Tacs | 327 Rigdewood Rd<br>WEST HARTFORD, CT 06107-3515 | 97 |
| Louis W Taylor | 30 Deepwood Rd<br>DARIEN, CT 6820 | 242 |
| Christina Tenhundfeld | 3711 Drakewood Dr<br>CINCINNATI, OH 45209 | 3,052 |
| Karl W Tenney | 1586 Deauville Ave<br>SALT LAKE CTY, UT 84121-1811 | 56 |
| Gregory P Theokas | 824 Bishop Rd<br>GROSSE POINTE PARK, MI 48230 | 104,768 |
| Mark Thomas | 6203 W Timberlane<br>HENDERSON, KY 42420 | 5,977 |

| Name | Address | Shares |
|---|---|---|
| Benjamin Tillery | 1560 Marigold Way<br>REDDING, CA 96003 | 46 |
| John Toland | 33 Turtle Back Rd S<br>NEW CANAAN, CT 06840-2630 | 242 |
| Scott Trask | 10500 Timberstone Rd<br>ALPHARETTA, GA 30022-5838 | 30 |
| Upch & Co | C/O Mellon Security Trust Co<br>For Acs Unclaimed Property<br>Clearinghouse Auyf0142702<br>120 Broadway 13th Fl Window<br>NEW YORK, NY 10271 | 28 |
| John Uran | 5714 Nightingale Ct<br>SAINT CLOUD, MN 56303 | 3,405 |
| Mary Utley | 13202 W Southport Rd<br>BRIMFIELD, IL 61517 | 550 |
| Rene Van Ausdall | 301 Independence<br>EAST PEORIA, IL 61611 | 2,265 |
| Anthony A Vasconcellos | 816 Farmsworth Ct<br>CINCINNATI, OH 45255 | 87,952 |
| Roswell F Vaughan Iii | 6118 Crab Orchard Rd<br>HOUSTON, TX 77057 | 121 |
| Kyle Vidrine | 4079 Poydras Hwy<br>BREAU BRIDGE, LA 70517 | 0 |
| George H Vreeland & Linda D Vreeland Jt Ten | 113 Penn Beach Dr<br>PENNSVILLE, NJ 08070-3643 | 42 |
| Robert Wagley | 28 S Lincoln<br>ROCKFORD, MI 49341 | 94 |
| Donald Wagner | 5 Tilton Rd<br>UTICA, NY 13501-6411 | 7,257 |
| Tracy G Walker | 1454 Freedom Lane<br>FORT COLLINS, CO 80526 | 21,979 |
| Natalie Wallace | 1938 Leavenworth St<br>SAN FRANCISCO, CA 94133-2527 | 70 |
| Erin Walsh | 3832 Terra Trace<br>EVANSVILLE, IN 47715 | 0 |
| Bayard H Walters | 109 Savoy Circle<br>NASHVILLE, TN 37205-5013 | 330,000 |
| Ferris Z Ward | 2473 Hardrock Circle<br>SALT LAKE CITY, UT 84119-4929 | 140 |
| Jilian Watson | 16521 West Horseshoe Trail<br>LINDEN, MI 48451 | 5,857 |
| Adlai Wertman | 1111 Chautauqua Blvd<br>PACIFIC PLSDS, CA 90272 | 73 |

| Name | Address | Shares |
|---|---|---|
| Alan White | 9112 Hurstbourne Ln<br>LOUISVILLE, KY 40220 | 81 |
| Shannon C Wielinga | 7450 Susan Springs Dr<br>WEST CHESTER, OH 45069-4085 | 85 |
| Frederick B Winch & Elva C Winch Jt Ten | 2693 Franciforte Dr.<br>SANTA CRUZ, CA 95065 | 14 |
| Andrea Wind | 85 Harbor View W<br>LAWRENCE, NY 11559-1911 | 140 |
| David Wind | 85 Harbor View W<br>LAWRENCE, NY 11559-1911 | 281 |
| Stacy Wind | C/O Michael Wind 85 Harbor View W<br>LAWRENCE, NY 11559-1911 | 140 |
| Lynn Wisnia | 14 Heritage Court<br>WOODCLIFF LAKE, NJ 07675-8347 | 70 |
| Charles H Wood Jr | 107 Innisbrook Dr<br>BROUSSARD, LA 70518 | 744 |
| Maureen Woods | 6338n 1475 East Road<br>Hayworth<br>HEYWORTH, IL 61745 | 376 |
| Penny J Woolf | 313 Mcclelland St<br>WATERTOWN, NY 13601 | 436 |
| Wpg Corporate Development Associates V LLC | 8 Sound Shore Dr Ste 265<br>GREENWICH, CT 6830 | 2,464,162 |
| Wpg Corporate Development Associates V (Overseas) LP | 8 Sound Shore Dr Ste 265<br>GREENWICH, CT 6830 | 381,290 |
| John W Wyant | Blue Chip Venture Company Ltd<br>250 East Fifth St<br>Suite 1100<br>CINCINNATI, OH 45202 | 8,750 |
| Matthew A Yeoman | 3960 Von Rissen Ct<br>CLEVES, OH 45002 | 10,093 |
| Mark Young | 10810 260th St<br>SAINT CLOUD, MN 56301 | 1,770 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REGENT COMMUNICATIONS, INC.,[1] | Case No. 10-_____ (____) |
| Debtor. | Joint Administration Pending |

## DECLARATION REGARDING LIST OF EQUITY SECURITY HOLDERS

I, Anthony A. Vasconcellos, Executive Vice President and Chief Financial Officer of

Regent Communications, Inc., a Delaware corporation, declare under penalty of perjury that I

have reviewed the List of Equity Security Holders submitted herewith, and that the list is true

and correct to the best of my information and belief.

Dated: ___*March 1*___, 2010

_____
Anthony A. Vasconcellos

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Regent Communications, Inc., a Delaware corporation (2857); B & G Broadcasting, Inc., a Delaware corporation (9111); Livingston County Broadcasters, Inc., an Illinois corporation (2024); Regent Broadcasting, LLC, a Delaware limited liability company (1632); Regent Broadcasting Management, LLC, a Delaware limited liability company (5451); Regent Broadcasting of Albany, Inc., a Delaware corporation (7566); Regent Broadcasting of Bloomington, Inc., a Delaware corporation (2658); Regent Broadcasting of Buffalo, Inc., a Delaware corporation (7815); Regent Broadcasting of Chico, Inc., a Delaware corporation (1263); Regent Broadcasting of Duluth, Inc., a Delaware corporation (9495); Regent Broadcasting of El Paso, Inc., a Delaware corporation (1469); Regent Broadcasting of Erie, Inc., a Delaware corporation (8859); Regent Broadcasting of Evansville/Owensboro, Inc., a Delaware corporation (9510); Regent Broadcasting of Flagstaff, Inc., a Delaware corporation (3259); Regent Broadcasting of Flint, Inc., a Delaware corporation (6474); Regent Broadcasting of Ft. Collins, Inc., a Delaware corporation (9503); Regent Broadcasting of Grand Rapids, Inc., a Delaware corporation (6790); Regent Broadcasting of Kingman, Inc., a Delaware corporation (3260); Regent Broadcasting of Lafayette, LLC, a Delaware limited liability company (5450); Regent Broadcasting of Lake Tahoe, Inc., a Delaware corporation (1261); Regent Broadcasting of Lancaster, Inc., a Delaware corporation (9505); Regent Broadcasting of Lexington, Inc., a Delaware corporation (0854); Regent Broadcasting of Mansfield, Inc., a Delaware corporation (6796); Regent Broadcasting Midwest, LLC, a Delaware limited liability company (5369); Regent Broadcasting of Palmdale, Inc., a Delaware corporation (5821); Regent Broadcasting of Peoria, Inc., a Delaware corporation (9348); Regent Broadcasting of Redding, Inc., a Delaware corporation (1262); Regent Broadcasting of San Diego, Inc., a Delaware corporation (3044); Regent Broadcasting of South Carolina, Inc., a Delaware corporation (3151); Regent Broadcasting of St. Cloud, Inc., a Delaware corporation (9265); Regent Broadcasting of St. Cloud II, Inc., a Minnesota corporation (6304); Regent Broadcasting of Utica/Rome, Inc., a Delaware corporation (1480); Regent Broadcasting of Watertown, Inc., a Delaware corporation (1476); Regent Broadcasting West Coast, LLC, a California limited liability company (8962); Regent Licensee of Chico, Inc., a Delaware corporation (1681); Regent Licensee of Erie, Inc., a Delaware corporation (8861); Regent Licensee of Flagstaff, Inc., a Delaware corporation (1677); Regent Licensee of Kingman, Inc., a Delaware corporation (9969); Regent Licensee of Lake Tahoe, Inc., a Delaware corporation (2685); Regent Licensee of Lexington, Inc., a Delaware corporation (5710); Regent Licensee of Mansfield, Inc., a Delaware corporation (8147); Regent Licensee of Palmdale, Inc., a Delaware corporation (1678); Regent Licensee of Redding, Inc., a Delaware corporation (1679); Regent Licensee of San Diego, Inc., a Delaware corporation (3036); Regent Licensee of South Carolina, Inc., a Delaware corporation (3136); Regent Licensee of St. Cloud, Inc., a Delaware corporation (9266); Regent Licensee of Utica/Rome, Inc., a Delaware corporation (1482); Regent Licensee of Watertown, Inc., a Delaware corporation (1477).